**LIFE INSURANCE COMPANY OF NORTH AMERICA, Plaintiff,**

v.

**CENTENNIAL LIFE INSURANCE COMPANY, Defendant.**

No. 95–2331–KHV.

United States District Court, D. Kansas.

June 10, 1996.

Richard N. Bien, James A. Durbin, Swanson, Midgley, Gangwere, Kitchin & McLarney, L.L.C., Kansas City, MO, for Life Insurance Company of North America.

Stacie Kennon Gram, John L. Mullen, Franke & Schultz, P.C., Kansas City, MO, for Centennial Life Insurance Company.

### MEMORANDUM AND ORDER

VRATIL, District Judge.

This matter comes before the Court on cross-motions for summary judgment, *Plaintiff Life Insurance Company of North America's Motion For Summary Judgment* (Doc. # 55) filed April 12, 1996, and *Defendant's Motion For Summary Judgment* (Doc. # 60) filed April 12, 1996. Both motions ask the Court to interpret and apply the recurrent disability and termination provisions of the group long-term disability insurance policy which Centennial Life Insurance Company underwrote for employees of Lockheed Aircraft Corporation beginning July 1, 1991. Trial on this issue was set on the docket beginning June 4, 1996. The parties stipulated, however, that all relevant evidence is before the Court in the pending summary judgment motions; that neither party in-

tends to present additional evidence at trial; and that the issue is ripe for adjudication on the record presently before the Court. *Joint Stipulation* (Doc. # 71) filed May 30, 1996.

The issue which the parties present is one which is readily resolved by the unambiguous language of the policy in question. The Court need not and does not resort to parol evidence, because the terms of the policy are crystal clear in all pertinent respects. For the following reasons, the Court finds that the contract interpretation urged by Life Insurance of North America [LINA] is correct. In that respect, LINA's motion for summary judgment must be sustained. Summary judgment must be granted when there are no genuine issues of material fact and movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

### Undisputed Facts

The undisputed facts are as follows:

Lockheed Corporation provides to its employees, and the employees of its subsidiaries, including Lockheed Space Operations, a long term disability employee benefit plan known as the Lockheed Corporation Long Term Disability Plan [the LTD Plan]. Prior to June 30, 1991, Lockheed insured the payment of benefits under that plan through insurance purchased from Centennial Life Insurance Company [Centennial]. Lockheed changed carriers, however, and beginning July 1, 1991, Lockheed insured the payment of benefits through insurance purchased from LINA.

Lockheed employed Daniel Cryer and Rita Yotter, both of whom were totally disabled on June 30, 1991, when Lockheed discontinued coverage under the Centennial policy.[1] Thereafter Cryer and Yotter each returned to work for a brief period (less than six months), but they each succumbed to what we assume for purposes of this discussion were their prior disabilities.[2] Centennial de-

---

1. While Cryer and Yotter were totally disabled on the policy termination date, Cryer had not completed the elimination period. Centennial paid disability benefits to Cryer from July 21, 1991, when he completed the elimination period, to September 16, 1991.

2. Cryer was disabled by chronic fatigue syndrome on January 21, 1991. He returned to work on September 19, 1991, for 40 days. He relapsed, however, and did not work again until December 7, 1991. Cryer worked until April 7, 1992, when he again relapsed. Cryer remained

nied coverage for both claims, maintaining that its policy had terminated prior to the time their claims arose. LINA likewise denied the claims but later, as an accommodation to Lockheed, paid them and took an assignment of the Cryer and Yotter claims against Centennial. By this action, LINA seeks to recover those benefits—which total approximately $36,000.00—from Centennial.

Centennial's policy contained the following language with respect to termination of insurance:

> The insurance of an Insured Person shall terminate on the earliest of the following times:
>
> (a) The date this policy is terminated;
>
> (b) The end of the period for which his contribution has been made if the required premium is not paid as provided;
>
> (c) The date he ceases to be an eligible Person under this Policy;
>
> (d) On the date the Person leaves or is dismissed from employment of the Policyholder, or is retired or pensioned, or ceases active work for any other reason.
>
> In the event an Insured Person is totally disabled on the date this policy is discontinued, the benefits provided by this Policy to such totally disabled Insured Person shall be extended during the continuance of such total disability. The extension of benefits hereby provided shall be subject to all the terms and conditions of the policy, as if the discontinuance had not occurred.

Centennial's policy defined "total disability" as follows:

> "Total Disability—His Occupation" as used herein means the inability of the Insured Person to work and perform every duty of his occupation during the Elimination Period and thereafter for a period not to exceed 104 weeks.

disabled until March 1, 1993. At no time did Cryer return to work for six months of active employment.

Yotter became disabled due to a back injury on May 10, 1990, and she received disability benefits from Centennial through February 13, 1992. She returned to work from February 14, 1992

> "Total Disability—Any Occupation" shall mean the inability of the Insured Person to engage in any gainful occupation or employment for which such Person is qualified or may reasonably become qualified by such Person's education, training or experience.

Centennial's policy also contained a "recurrent disability provision which was designed to address the problem that an employee whose condition was beginning to improve might be reluctant to return to work if he or she feared that recurrence of the disability would require another 180–day elimination period before benefits would be resumed. The "recurrent disability" provision addressed those concerns by extending credit for the prior elimination period, as follows:

### RECURRENT DISABILITY

> "Period of Total Disability" means the period of time during which the Insured Person is totally disabled, whether from one or more causes, beginning with the first day of total disability and ending on the date the Insured Person ceases to be totally disabled, and returns to active work except that
>
> (1) After at least three months of continuous disability during the Elimination Period, successive periods of total disability due to the same or related causes shall be considered one Period of Total Disability if separated by no more than one calendar month of active employment, but any period of return to active employment in excess of one day, and less than a calendar month shall be added to the Elimination Period;
>
> (2) After the expiration of the Elimination Period, successive periods of total disability due to the same or related causes shall be considered one Period of Total Disability if separated by less than six months of active employment.

through March 30, 1992, when she was involved in an accident which apparently aggravated her back problems. The parties have disagreed about the extent to which Yotter sustained a recurrence of her prior disability, as opposed to a new injury, on that date.

## Analysis

LINA argues that the Centennial policy affords coverage for disabilities which recur after June 30, 1991, and the Court agrees. The policy language is unambiguous. It provides that for persons who are totally disabled on the date the policy is discontinued, benefits are continued *as if the discontinuance had not occurred.* Moreover, benefits are continued "during the continuance of such total disability," *i.e.* from the time the employee becomes "totally disabled" until the date the employee ceases to be totally disabled *and* returns to active work.[3] That rule makes a critical exception, however, for employees who cease to be physically disabled and return to active work but thereafter encounter successive periods of total disability due to the same or related causes.

The policy specifically stipulates that after the expiration of the Elimination Period, successive periods of total disability due to the same or related causes shall be considered one period of total disability if separated by less than six months of active employment. Under this provision, Centennial is liable for payment of benefits for recurring disability after an employee returns to active work for less than six months and suffers a recurrence of total disability due to the same or related causes. The fact that the policy has been otherwise discontinued is immaterial.

Centennial concedes that employees who were totally disabled on June 30, 1991 retained coverage after the policy terminated, so long as they were "totally disabled" under the policy. Centennial argues that coverage lapsed, however, when any such employee returned to full-time active work. Centennial argues that after they returned to work, all coverage terminated—notwithstanding any "recurrent disability" provision to the contrary. The plain language of the policy forecloses this line of reasoning. The policy makes it clear that a return to active work for less than six months *does not,* standing alone, effect a termination of coverage. Centennial's argument ignores the plain language of its policy, which guarantees a con-

tinuation of coverage for recurrent disability notwithstanding an employee's unsuccessful effort to resume full-time active employment.

Without directly addressing the language of the "recurrent disability" provision, Centennial argues that its purpose "was specifically addressed when Lockheed awarded the underwriting of its employee long term disability benefit plan to LINA." More particularly, Centennial notes that in soliciting replacement coverage, Lockheed stipulated that bids must include a "continuity of coverage" guarantee so that employees currently enrolled in the LTD Plan would not lose benefits as a result of the change in carriers, and stated that all waiting periods and elimination periods under the Centennial policy must be credited under the new plan. This argument misses the mark. Whatever may be LINA's obligation under the new policy, Centennial's obligation is fixed by the unambiguous language of the policy before us.

**IT IS THEREFORE ORDERED** that insofar as the coverage issue is concerned, *Plaintiff Life Insurance Company of North America's Motion For Summary Judgment* (Doc. # 55) filed April 12, 1996, be and hereby is sustained and *Defendant's Motion For Summary Judgment* (Doc. # 60) filed April 12, 1996, be and hereby is overruled.

---

**3.** Under Centennial's reading of its policy, benefits are continued until the employee ceases to be totally disabled *or* returns to active work, for however short a period.