UNITED STATES COURT OF APPEALS

**Filed 1/10/97**

FOR THE TENTH CIRCUIT

---

JAMES HUBBERT,

     Plaintiff-Appellant,

v.

PRUDENTIAL INSURANCE
COMPANY OF AMERICA; DIGITAL
EQUIPMENT CORPORATION
LONG-TERM DISABILITY
BENEFITS PLAN,

     Defendants-Appellees,

DIGITAL EQUIPMENT
CORPORATION, Administrator,
Digital Equipment Corporation Long-
Term Disability Benefits Plan,

     Defendant.

No. 96-1093
(D.C. No. 95-Z-167)
(D. Colo.)

---

ORDER AND JUDGMENT[*]

---

Before EBEL and HENRY, Circuit Judges, and DOWNES,[**] District Judge.

---

[*]     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]     Honorable William F. Downes, District Judge, United States District Court for the District of Wyoming, sitting by designation.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Plaintiff James Hubbert appeals the district court's summary judgment in favor of defendants Prudential Insurance Company of America (Prudential) and the Digital Equipment Corporation Long-Term Disability Benefits Plan (Digital Plan). He does not appeal the judgment entered in favor of his former employer, Digital Equipment Corporation (Digital). Because plaintiff's current period of total disability commenced after his coverage terminated, and because the "process of nature" rule does not apply under these circumstances, we affirm the district court's judgment.

Plaintiff was employed at Digital until June 28, 1991. During his employment, he participated in Digital's long term disability plan, insured through Prudential. This plan provided benefits to employees during periods of "total disability," defined as the inability to perform the duties of the employee's occupation for the initial duration [elimination period plus two years], and thereafter the inability to perform the duties of any job for which the employee was qualified. See Joint App., Vol. I at 44, 51. The plan specified when benefits were payable for a period of total disability, as follows:

A.     BENEFITS FOR TOTAL DISABILITY

Benefits are payable under this Section for a period of your Total Disability.  Those benefits start on the first day after the Elimination Period (in the Schedule of Benefits) for that period of Total Disability.

The benefits are payable for your period of Total Disability only if the period of Total Disability began while you were a Covered Person.

Id. at 51.  The "Elimination Period" was defined as:

For each period of Total Disability due to Sickness or accidental Injury, the first 26 weeks of continuous Total Disability.

If you temporarily recover from your Total Disability for 14 days or less during the 26 week period, your Total Disability will be treated as continuous.

Id. at 44.  The plan also provided that if an employee recovered from a period of total disability "for which benefits were payable," a subsequent period of total disability would be treated as part of the prior period, unless (1) the employee worked full-time for more than six months between the two periods of disability; (2) the periods were due to wholly unrelated causes; or (3) the employee became eligible for other long term disability insurance.  Id. at 51.

On February 21, 1991, plaintiff underwent back surgery, rendering him totally disabled.  He collected short term disability payments from that date until May 28, 1991.  In April 1991, plaintiff was notified that his employment with Digital would terminate on June 28, 1991, as part of a reduction in force.  Through Digital's Transition Financial Support Option program (TFSO), plaintiff was offered the

following options: (1) continue to collect short term disability benefits until his twenty-six week period was satisfied, then begin receiving long term disability benefits; or (2) discontinue receiving short term disability benefits, obtain a physician's release to return to work, collect his full time salary, and receive a lump-sum severance payment upon termination. See id. at 64. On May 28, 1991, plaintiff obtained a release to return to work, and began to receive his full salary. Plaintiff admits that he was no longer totally disabled at this time. Id., Vol. III at 391.

On June 14, 1991, plaintiff signed a TFSO agreement under which he was to receive a lump-sum payment equal to 25.22 weeks of wages. The agreement stated that plaintiff agreed to release any claims he might have against Digital, and that the effect of signing the agreement was:

> a.   . . . to prevent Employee from suing Digital, its officers, directors, agents, successors or assigns under:
> . . .
> • any law regulating the provision of employee benefits, or under any Digital benefit plan except as noted below;
> . . .
> b.   but, except as specifically provided herein, is not to prevent Employee from receiving any benefit which Employee would otherwise be entitled to under an existing Digital benefit plan, including,
>
> • benefits under Digital's Pension and SAVE Plans and
> • benefits under Workers Compensation.

Id., Vol. I at 66. On the same date, plaintiff signed a document detailing which insurance coverages could be converted to individual policies and which coverages

-4-

would expire upon termination. Just above his signature, the form stated that plaintiff's long term disability insurance would expire at midnight on June 29, 1991, and could not be converted to an individual policy. Id. at 69. Plaintiff's employment with Digital ended on June 28, 1991.

In mid-August 1991, plaintiff again began experiencing back pain. In October 1991, he was informed that scar tissue from his surgery was impinging on the nerve. In September 1993, plaintiff wrote to Digital regarding his condition, seeking to obtain long term disability benefits. Upon being informed that Prudential was the appropriate party with whom to file a claim, plaintiff submitted his claim in December 1993. Prudential denied the claim on the ground that claimant had not satisfied the elimination period during his initial period of total disability, based on his medical improvement in May 1991, and that his second period of total disability commenced after he was no longer covered by the Digital Plan. Id., Vol. II at 205-06. Prudential denied plaintiff's appeals, and this lawsuit followed.

Plaintiff brought this action for benefits against Prudential, Digital, and the Digital Plan, pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1371 (ERISA). The district court granted summary judgment in favor of all defendants, finding that the long term disability plan was not ambiguous, that plaintiff's current period of disability commenced after he was no longer

covered, and that he had not satisfied the elimination period before his coverage expired.

On appeal, plaintiff argues that the language "period of total disability" is ambiguous in cases involving a recurring disability, and that, under the "process of nature" rule, his total disability commenced in February 1991, entitling him to long term disability payments under the plan. He argues also that the TFSO agreement did not operate to release the Digital Plan from claims for benefits, and that the parties are estopped from relying on any reason which was not identified originally as a basis for denying benefits.

Because it is jurisdictional, we examine first whether plaintiff has standing to pursue this claim. See Alexander v. Anheuser-Busch Cos., 990 F.2d 536, 538 (10th Cir. 1993). Under 29 U.S.C. § 1132(a)(1)(B), "participants" have standing to bring an action to enforce their rights under the terms of an ERISA plan.[1] To be a "participant," a plaintiff must either be (1) an employee in, or reasonably expected to be in, currently covered employment; (2) a former employee with a reasonable expectation of returning to covered employment; (3) a former employee with a colorable claim that he will prevail in a suit for benefits; or (4) a former employee with a colorable claim that eligibility requirements will be fulfilled in the future.

---

[1]    The statute also authorizes "beneficiaries" to bring such an action. Plaintiff does not claim to be a beneficiary under the plan.

Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117-18 (1989); Alexander, 990 F.2d at 539; 29 U.S.C. § 1002(7). Here, plaintiff is no longer employed by Digital and does not appear to have a reasonable expectation of returning to such employment. Furthermore, this is not a situation in which the plan's eligibility requirements will be fulfilled in the future. Thus, plaintiff has standing, if at all, only if he has a colorable claim that he will prevail in a suit for benefits.

This court has not defined what is meant by a "colorable" claim for benefits. In Alexander v. Anheuser-Busch Cos., 990 F.2d at 539, we held that the plaintiff's claim for disability benefits was not colorable because his condition was clearly excluded by the plain language of his policy, and because Tenth Circuit authority precluded expansion of an ERISA plan's coverage under an estoppel theory. Our only other cases have involved claimants seeking damages, who did not have colorable claims for "vested benefits improperly withheld." See, e.g., Raymond v. Mobil Oil Corp., 983 F.2d 1528, 1535-36 (10th Cir. 1993)(retirees lacked standing because they accepted a lump-sum payment of all vested benefits); Mitchell v. Mobil Oil Corp., 896 F.2d 463, 474 (10th Cir. 1990)(same); see also Boren v. Southwestern Bell Tel. Co., 933 F.2d 891, 894 (10th Cir. 1991)(claimant who was not enrolled in plan had no colorable claim to vested benefits).

Several other circuits have defined a colorable claim as a claim that is "arguable and nonfrivolous." See, e.g., Davis v. Featherstone, 97 F.3d 734, 737-38

(4th Cir. 1996)(holding colorable claim must be "arguable and nonfrivolous"); Panaras v. Liquid Carbonic Indus., 74 F.3d 786, 790 (7th Cir. 1996)(explaining that jurisdiction depends on an "arguable" claim and that "only if any claim must be frivolous is jurisdiction lacking")(quotations omitted). Considering the limited nature of a jurisdictional inquiry, we agree that a claimant need only present an "arguable and nonfrivolous" claim for benefits to satisfy the "colorable" requirement. Although the claim may later be dismissed for failure to state a claim or for lack of a genuine issue of material fact, these determinations require the court to assume jurisdiction before examining the merits of the controversy. See Bell v. Hood, 327 U.S. 678, 681-83 (1946)(holding jurisdiction was not defeated by plaintiffs' possible failure to state a claim, which is a determination on the merits, because the claim was not "patently without merit").

Applying this standard to the case at hand, we conclude that plaintiff's claim is not patently without merit, and that, therefore, he has standing to assert his claim for benefits. Although, as we will discuss, the language of the disability policy precludes his claim, plaintiff's argument regarding application of the "process of nature" rule is "not so bizarre or so out of line with existing precedent -- that he necessarily stumbles over the low threshold of the 'colorable' requirement." Andre v. Salem Technical Servs., 797 F. Supp. 1416, 1421 (N.D. Ill. 1992).

Our opinion in Alexander does not require a different result. There, plaintiff's legal theory was expressly precluded by Tenth Circuit authority holding that coverage under an ERISA plan cannot be expanded through estoppel. Here, in contrast, there is no authority, Tenth Circuit or otherwise, expressly holding that the "process of nature" rule does not apply under the circumstances of plaintiff's case. Because plaintiff's theory has not been foreclosed by prior case law, it is arguable and nonfrivolous, and plaintiff has standing to bring this action for benefits. See Goosby v. Osser, 409 U.S. 512, 518 (1973)(holding that prior case law did not render claim so insubstantial that three-judge panel did not need to be convened, because it did not "inescapably render the claim frivolous; previous decisions that merely render claims of doubtful or questionable merit do not render them insubstantial").

Digital Plan also argues that it is not a proper defendant in this case because plaintiff released all claims he had against Digital in the TFSO Agreement. We need not determine whether the document signed by plaintiff released these particular claims, because, in any event, the release did not waive any claims against the Digital Plan. Digital, as plaintiff's former employer, and the Digital Plan, are two separate entities, and a release of one does not operate to release the other. See Antoniou v. Thiokol Corp. Group Long Term Disability Plan, 849 F. Supp. 1531, 1534 (M.D. Fla. 1994)(holding that employer and Plan were separate legal entities, and that release of employer did not release disability plan); see also 29 U.S.C.

-9-

§ 1132(d)(1) (stating that a plan can sue and be sued as an entity); 29 U.S.C. § 1132(d)(2) (stating that money judgment against plan enforceable only against plan as an entity. Digital Plan, therefore, was a proper defendant in this action for benefits.

Turning to the merits, we must first determine the appropriate standard under which to review Prudential's decision denying benefits. In <u>Firestone Tire & Rubber Co.</u>, 489 U.S. at 115, the Court held that courts should review benefit eligibility determinations de novo, unless the ERISA plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." If the plan accords such discretion, however, the administrator's eligibility determination will be overturned only if it is arbitrary and capricious. <u>Id.</u> at 109-11; <u>Chambers v. Family Health Plan Corp.</u>, 100 F.3d 818, 825-27 & n.1 (10th Cir. 1996).

Defendants argue that Prudential's denial of benefits should be reviewed under the arbitrary and capricious standard because the plan grants Prudential discretion to determine when a claimant is totally disabled. <u>See</u> Joint App., Vol. I at 51 (stating "'Total Disability' exists when Prudential determines that all of these conditions are met . . . ."). Even assuming that this language grants discretion to Prudential, plaintiff's claim was not denied under this particular provision, but under a different provision requiring that his "period of disability" last for a certain length of time

before benefits are payable. It is only when a plan specifically confers discretion to decide the question on which the benefit denial is based that the arbitrary and capricious standard applies. See Haley v. Paul Revere Life Ins. Co., 77 F.3d 84, 89 (4th Cir. 1996)(holding decision would be reviewed under de novo standard because plan language did not grant discretion to make the particular decision under review). Because the plan did not grant Prudential discretion to determine whether the elimination period was satisfied or when plaintiff's second period of disability began, we review its decision de novo.

We conclude that Prudential did not err in denying plaintiff's claim for long term disability benefits. Contrary to plaintiff's assertion, the plan language providing benefits for a "period of total disability" is not ambiguous when applied to recurring disabilities. The plan, in fact, specifically defines when a recurrence of total disability will be treated as part of the same period of disability, depending on whether the total disability recurs during the elimination period or after an employee has already begun receiving benefits. If the employee recovers from his or her total disability during the elimination period, a recurrence of the total disability will be considered part of the same period if it occurs within fourteen days. If, however, the employee has already satisfied the elimination period and is collecting long term disability benefits when he or she temporarily recovers, a recurrence of total disability will be treated as part of the same period unless the employee has worked

full-time for more than six months between the two periods of disability. These provisions are straightforward and not ambiguous. See, e.g., Life Ins. Co. of N. Am. v. Centennial Life Ins. Co., 927 F. Supp. 1476, 1479 (D. Kan. 1996)(finding similar recurring disability provisions not ambiguous).

Applying these provisions, it is clear that plaintiff did not satisfy the elimination period for the "period of total disability" commencing in February 1991, because his temporary recovery lasted more than fourteen days. Further, because he did not satisfy the eligibility requirements and did not begin receiving long term disability benefits before his recovery in May 1991, his subsequent recurrence in August could not be treated as a part of the earlier "period of total disability," despite the fact that he did not work full-time for six months between the periods. Instead, plaintiff's current "period of total disability" commenced in August 1991, long after he ceased being a covered person, and therefore he was not entitled to benefits under the long term disability plan. Any other interpretation would negate the plain language of the recurring disability provisions.

We express no opinion in this case about the viability of the "process of nature" rule under other circumstances. However, we conclude that, under the circumstances of this case, the "process of nature" rule has no applicability.

> The "process of nature" rule holds that, within the meaning of policy provisions requiring disability within a specified time after the accident, the onset of disability relates back to the time of the accident itself whenever the disability arises directly from the accident within such

> time as the process of nature consumes in bringing the person affected
> to a state of total [disability].

Moore v. American United Life Ins. Co., 197 Cal. Rptr. 878, 892 (Cal. Ct. App. 1984)(quotation omitted); see also McClure v. Life Ins. Co. of N. Am., 84 F.3d 1129, 1133 (9th Cir. 1996); Hawes v. Kansas Farm Bureau, 710 P.2d 1312, 1320 (Kan. 1985).

The rule was developed for a policy provision far different from that at issue here, designed to ensure a causal relationship between the disability and an accident by limiting the time for disability to result. See Athan v. Fireman's Fund Am. Life Ins. Co., 244 N.W.2d 271, 273-74 (Minn. 1976)(per curiam); Laurent B. Frantz, Annotation, Validity and Construction of Accident Insurance Policy Provision Making Benefits Conditional on Disability Occurring Immediately, or At Once, or Within a Specified Time of Accident, 39 A.L.R.3d 1026, 1029-30 (1971).

Here, the policy provision turns not on whether plaintiff's disability was caused by a specific event, but whether his "period of total disability" lasted sufficiently long as to entitle him to benefits. Under the policy, plaintiff was entitled to benefits for multiple periods of disability regardless of the causative event, so long as the particular period of disability commenced while he was covered and lasted for a sufficient period of time. Thus, the process of nature rule has no relevance to the current case. Compare Holcomb v. Prudential Insurance Co. of America, 673 F.2d 102, 104-06 (5th Cir. 1982), in which the court emphasized that

-13-

coverage did not turn on "periods" of disability, but on whether the total disability was due to accidental injury, noting that the purpose of the policy was to ensure a causal connection between the initial injury and the later disability.

Plaintiff's construction of the "process of nature" rule would entitle any claimant to benefits who suffers a recurring disability, despite the clear and unambiguous policy provisions to the contrary. In the absence of an ambiguity, we are required to give effect to an insurance policy according to the plain and ordinary meaning of its terms. Regional Bank of Colo., N.A. v. St. Paul Fire & Marine Ins. Co., 35 F.3d 494, 496 (10th Cir. 1994). Because we may not "rewrite an unambiguous policy nor limit its effect by a strained construction," id. (quotation omitted), we conclude that plaintiff is not entitled to benefits under Digital's long term disability plan.

The judgment of the United States District Court for the District of Colorado is AFFIRMED.

Entered for the Court

David M. Ebel
Circuit Judge