LAWRENCE D. ATHAN v. FIREMAN'S FUND
AMERICAN LIFE INSURANCE COMPANY.

244 N. W. 2d 271.

July 9, 1976—No. 46234.

*Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, R. Gregory Stephens*, and *O. C. Adamson II*, for appellant.
*James G. Paulos*, for respondent.

PER CURIAM.

On this appeal by the insurer from an adverse judgment in plaintiff's action to recover disability benefits, the main question is whether the trial court correctly applied the proper rule to the policy provision in question.

The material facts are not in dispute. Plaintiff, a used car salesman, procured the policy in question through his home mortgage company. The pertinent provisions of the policy are set forth below.[1] On August 18, 1967, while at work, plaintiff slipped on some grease in employer's

---

[1] "A. Total Disability—Accident: When as the result of injury and commencing within thirty days after the date of the accident, the Insured is wholly and continuously disabled and prevented from performing each and every duty pertaining to his occupation, the Company will pay periodically the Monthly Indemnity stated in the Schedule for the period the Insured is so disabled, not to exceed twelve consecutive months. After the payment of Monthly Indemnity for twelve months as aforesaid, the Company will continue the periodic payment of Monthly Indemnity so long as the Insured is wholly and continuously disabled and prevented by reason of said injury from engaging in each and every occupation or employment for wage or profit for which he is reasonably qualified by reason of education, training or experience,

garage and injured his ankle. He immediately saw a doctor who advised him to stay off the ankle for a short time. After a few days rest, plaintiff returned to work at his usual employment 4 to 5 hours per day, 6 days a week until 1969. He was unable to work full time as the ankle was some handicap to him. Plaintiff underwent surgery on his ankle and ceased working in January 1969.

Plaintiff did not file a claim under the policy until May 1969. The company recognized the claim under the sickness disability portion of the policy. See, footnote 1, *supra*. Payments for 5 years commencing in January 1969 and ending in January 1974 were made. These payments amounted to the maximum amount due under the sickness disability section of the policy. The company denied any further liability under the policy.

In May 1974, plaintiff's leg was amputated. This action was started to recover the balance of the benefits, claiming the additional benefits were due under the accident provision of the policy.

The insurer contended that the clear and unambiguous terms of the policy required plaintiff to be wholly and continuously disabled and prevented from performing his work within 30 days after the accident. The trial court found the accident provision of the policy applicable. An award to plaintiff of benefits in excess of that demanded and allowable under the policy was made and will be considered hereinafter.

The trial court's construction of the policy is best stated in his memorandum attached to his findings in which he said in part:

---

not to exceed an additional 108 consecutive months as the result of any one accident.

"B. Total Disability—Sickness: When as the result of sickness and commencing while this policy is in force, the Insured is wholly and continuously disabled and prevented from performing each and every duty pertaining to his occupation, the Company will pay periodically the Monthly Indemnity stated in the Schedule for the period the Insured is so disabled, not to exceed twelve consecutive months. After the payment of Monthly Indemnity for twelve months as aforesaid, the Company will continue the periodic payment of Monthly Indemnity so long as the Insured is wholly and continuously disabled and prevented by reason of said sickness from engaging in each and every occupation or employment for wage or profit for which he is reasonably qualified by reason of education, training or experience, not to exceed an additional forty-eight consecutive months as the result of any one period of sickness."

"* * * The only logical interpretation of this contract seems to the Court to be that the 30 day limitation written in the policy refers to an accident in which the insured is injured and does not refer nor limit recovery, if the injury becomes a total disability whenever that total disability occurs. The Court thus reaches a result which would not be contrary to any manifest intentions of the contracting parties but in the Court's opinion would be exactly in line with the intentions of the parties, i. e., to insure coverage of the totally disabled person when there is an accident and an injury develops therefrom within thirty days. A reasonable amount of insureds would be covered with this interpretation. The other choice of interpretation urged upon the court by the defendant, is to interpret the contract to read that within thirty days after the date of the accident there is not only an injury but within that same period of time, i.e., thirty days, the plaintiff is totally and continously disabled, * * *.

"The physicians that took care of the plaintiff from the injury in 1967 to the amputation in 1974, did so in a conservative manner hoping to save the foot and ankle. The fact that the 'process of nature' led from the accident to an injury to the amputation certainly, in any event, relates the amputation back to the injury and accident. There is no question that the injury and resulting amputation found the plaintiff wholly and totally disabled within the meaning of the policy terms."

Interpreting accident and health insurance policies containing time limitation provisions has been the subject of much litigation. A fairly current annotation of the cases on this particular subject matter appears in 39 A. L. R. 3d 1028. A preliminary summary and analysis of these decisions states as follows (39 A. L. R. 3d 1026):

"Cases dealing with accident insurance policy provisions making benefits conditional on the occurrence of disability either immediately or within a specified time after the accident suggest that two broad policy considerations are at work, each militating for a different result.

"On the one hand, it is recognized that the purpose of such clauses is to protect the insurer from the hazards of litigation where the causal relationship between the accident and the disability may be uncertain. On the other hand, public policy dictates that a construction be given insurance terms which avoids absurd results or the frustration of the reasonable expectations of the insured. The latter position rests upon the general rule that when the strict enforcement of an insurance policy provision will result in unreasonable and unjust forfeitures or an absurd result, the courts will refuse to enforce the strict meaning of the language of the policy. The result of the clash of the general

policy considerations appears to be that no general rule can be found which may be considered as governing the construction of the various terms imposing time limitations on the commencement of disability following injury, and thus each case may be said to turn on its own facts. [Id. 1029.]

\* \* \* \* \*

"\* \* \* The cases interpreting insurance policies which require that disability commence from the date of the accident or within a specified number of days thereafter have generally applied a literal construction to such time requirements, except to the extent that the courts have applied the 'process of nature rule' or 'the 24-hour rule.' [Id. 1030.]

\* \* \* \* \*

"While the courts generally appear to apply familiar rules of construction in interpreting insurance policy clauses which provide protection only when a disability occurs immediately or within a specified time of the accident, some courts have adopted the so-called 'processes of nature rule,' according to which, when an accidental injury directly leads to disability within such time as the processes of nature require to produce that effect, such disability is to be considered as immediate, and as dating from the time when the injury set the processes of nature in motion." (Id. 1033.)

The trial court relied upon the doctrine of "processes of nature." The rationale of this doctrine is set forth in the case annotated, namely, Schlick v. Benefit Trust Life Insurance Company, 273 Cal. App. 2d 302, 306, 78 Cal. Rptr. 60, 63, 39 A. L. R. 3d 1019, 1024, as follows:

"The rationale for the rule is set forth in Rathbun v Globe Indemnity Co., 107 Neb 18, 184 NW 903, 24 ALR 191, wherein the court pointed out that it was a matter of common knowledge that in a large majority of instances in which bodily injuries are received, the real nature and extent of injuries are not revealed until sometime in the future and after the first pains have passed away. The court said: 'The injured part often lies dormant for an indefinite period, with but little or no consciousness of its existence by the person injured, although from the very moment of the accident, perhaps, the processes of nature may be busily engaged in developing what may have seemed to be but a slight hurt into a most serious and perhaps fatal injury.' The weight of authority is that in such instances, the disability is held to be continuous from the date of the accident."

The evidence in this case is undisputed that the physician who treated plaintiff did so in a conservative manner from the date of the injury to the amputation. No problem of causal relationship between the acci-

dent and the injury was presented in the evidence. Additionally it should be noted that the length of time between the date of the accident and the total disability does not appear to affect the rule.. In Murphy v. Travelers Insurance Co. 141 Neb. 41, 2 N. W. 2d 576 (1942), the occurrences giving rise to the disability appeared in February 1966 and the total disability commenced in March 1969.

Further supportive of the trial court's decision is that it appears undisputed that the intention of the parties in contracting for the insurance was to insure the mortgage payments in the event the mortgagor became disabled. The construction adopted by the trial court thus avoids an absurd result and falls within the intention of the parties. We affirm the decision of the trial court in its interpretation of the policy provision and approve applying the "processes of nature" rule.

The action was to recover only the additional 5 years' disability benefits due under the accident provision of the policy. The trial court's award was in excess of the amount due at that time under his interpretation of the policy. The case is remanded so as to amend the conclusion of law to provide a recovery in accordance with this decision.

Affirmed in part; remanded in part.