**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 20, 2012

No. 11-20219

Lyle W. Cayce
Clerk

MID-CONTINENT CASUALTY COMPANY,

Plaintiff - Appellant

v.

ACADEMY DEVELOPMENT, INCORPORATED; CHELSEA HARBOUR,
LIMITED; LEGEND CLASSIC HOMES, LIMITED; LEGEND HOME
CORPORATION,

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC 4:08-CV-21

Before JOLLY, DAVIS, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

In this insurance, duty-to-defend dispute, Mid-Continent Casualty
Company challenges a summary judgment holding it had that duty for a state-court action against its insureds, Academy Development, Inc., Chelsea Harbour,
Ltd., Legend Classic Homes, Ltd., and Legend Home Corp. (defendants).
AFFIRMED.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 11-20219

I.

Defendants are related entities; they developed and built the Chelsea Harbour residential subdivision in Fort Bend County, Texas. Chelsea Harbour was developed as a lake-front community, and a key component was constructing lakes in order to have lake-side homes.

In 2005, defendants were sued in Texas state court by purchasers of homes in the subdivision (underlying-action plaintiffs). Among other claims, they raised negligent misrepresentation and violations of the Texas Deceptive Trade Practices Act. Underlying-action plaintiffs alleged, *inter alia*, that defendants knew when they sold the homes that the lake walls were failing and that water was leaking from the lakes onto adjacent home sites. They sought, *inter alia*, damages for diminution in the value of their homes resulting from the defective lakes.   The action was tried in 2008, with a jury returning a verdict for defendants.

Legend Classic Homes, Ltd. is a named insured under five consecutive, non-overlapping, commercial general liability (CGL) policies issued by Mid-Continent.   The other defendants are named insureds for each policy. The policies cover the period August 2000 to August 2005 and provide in relevant part:

> We [Mid-Continent] will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" to which this insurance applies. *We will have the right and duty to defend the insured against any "suit" seeking those damages.*

(Emphasis added.) The policies further provide:

> This insurance applies to . . . "property damage" only if: (1) The . . . "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; (2) The . . . "property damage" occurs during the policy period . . . .

No. 11-20219

And, they contain the following definition of "property damage":

> "Property damage" means: (a) Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or (b) Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

The policies varied in deductible amount and in the deductible's applying to defense costs. The last three policies contained a higher deductible and it also applied to defense costs. In all other respects, the policies are identical.

Mid-Continent initially provided a defense for defendants in the underlying state-court action under a reservation of rights. But, after the underlying-action plaintiffs filed their ninth amended petition, Mid-Continent informed defendants it would not pay for defense costs incurred after that filing. The basis for that decision was Mid-Continent's maintaining that, in the ninth amended petition, underlying-action plaintiffs no longer alleged "property damage" as defined in the policies. (Prior petitions had included allegations such as: "Plaintiffs' homes are experiencing an unreasonable amount of drywall cracks, joint separations in trim and windows, tiles breaking, mortar cracks, and windows cracking without impact".)

In January 2008, Mid-Continent filed this diversity action, seeking a declaration that it owed no duty to defend or indemnify defendants upon the filing of the ninth amended petition. (The duty to indemnify became moot when the verdict was returned for defendants in the underlying state-court action.) The parties filed cross motions for summary judgment regarding two issues: (1) whether Mid-Continent had a duty to defend after the ninth amended petition was filed; and (2) how defendants' defense costs should be apportioned among the policies, *i.e.*, whether defendants were entitled to choose a single triggered

No. 11-20219

policy to defend the underlying state-court action or were required to apportion the defense costs *pro rata* among all five triggered policies.

The district court granted summary judgment to defendants, ruling Mid-Continent owed a duty to defend. *Mid-Continent Cas. Co. v. Academy Dev., Inc.*, No. H-08-21, 2010 WL 3489355 (S.D. Tex. 24 Aug. 2010). The court concluded the policies were triggered by the ninth amended petition because, by alleging diminution in the value of their homes caused by defective lakes, underlying-action plaintiffs alleged "damages because of . . . 'property damage'". *Id.* at *4-7. The court also rejected Mid-Continent's contention that defense costs be apportioned across the policies, ruling defendants were instead entitled to select the policy under which they would demand a defense.  *Id.* at *7-8.

## II.

Mid-Continent challenges both rulings.  The summary judgment, including the court's interpretation of the policies, is reviewed *de novo.  Admiral Ins. Co. v. Ford*, 607 F.3d 420, 422 (5th Cir. 2010).  For this diversity action, Texas law controls.

## A.

To determine whether an insurer is obligated to defend against an action, Texas law applies the familiar "eight corners" rule: the duty to defend is determined exclusively by the allegations in the complaint and the language of the insurance policy. *Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines*, *Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). In that regard, the allegations in the complaint are read liberally in favor of coverage. *Evanston Ins. Co. v. Legacy of Life, Inc.*, 645 F.3d 739, 745 (5th Cir. 2011) (Texas law). "If *any* allegation in the complaint is *even potentially* covered by the policy then the insurer has a duty to defend its insured." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 552 (5th Cir. 2004) (internal quotation marks omitted) (emphasis in original) (Texas law); *Nautilus Ins. Co. v. Country Oaks Apartments Ltd.*, 566 F.3d 452, 455 (5th Cir.

No. 11-20219

2009) (Texas law) ("[A]ll reasonable inferences must be drawn in the insured's favor".).  In reviewing the underlying complaint, "[i]t is the factual allegations instead of the legal theories alleged which determine the existence of a duty to defend". *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 495 (Tex. 2008) (internal quotation marks omitted); *see also Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 617-18 (Tex. 1986) ("[W]e must look to the substance of the cause of action and not necessarily the manner in which it was pleaded".).

It is undisputed that the underlying-action plaintiffs sought damages for, *inter alia*, diminution in the value of their homes.  And, the "damages because of . . . 'property damage'" provision in a CGL policy includes recovery sought for economic losses, such as diminution in value, that are "attributable" to property damage.  *Nat'l Union Fire Ins. Co. v. Puget Plastics Corp.*, 532 F.3d 398, 403 (5th Cir. 2008) (Texas law). Accordingly, the question at hand is whether the ninth amended petition alleged diminution in value *attributable to* "*property damage*". For the following reasons, we conclude that it did, and, consequently, hold the duty to defend was triggered.

1.

First, the ninth amended petition alleged diminution in the value of underlying-action plaintiffs' homes attributable to damage to their property, as distinct from damage to their homes. It alleged:

> [T]he walls of the Lakes were breaking apart and . . . water was leaking from the Lakes into the adjacent properties upon which Plaintiffs' homes were located.

> Upon information and belief, continuous and excessive water leakage from the Lakes that flow laterally and under the Plaintiffs' homes and properties may have caused structural damage to Plaintiffs' homes and foundations. Over time, this will cause Plaintiffs to incur excessive repair costs to the foundations and structures of their homes.

No. 11-20219

Plaintiffs contend in this lawsuit that the failure of the Lakes directly affects the value of the homes in the community.

Because it is phrased in uncertain terms, *i.e.*, "*may* have caused structural damage", the allegation of damage to underlying-action plaintiffs' homes, even when read liberally, as required, is insufficient to allege "property damage" under the policies. But, the ninth amended petition refers to their "homes *and properties*" (emphasis added), which can reasonably be read to distinguish between their houses and their other property (land under and surrounding the house, *e.g.*, lawn bordering lake).  Re-stated, the uncertain language pertains only to the allegation of damage to "Plaintiffs' *homes*" (emphasis added). By alleging water leakage onto their *properties*, as distinct from their *homes*, and not being uncertain, the ninth amended petition alleged "property damage"under the policies, and that this damage affected the value of their homes.

2.

Alternatively, the ninth amended petition also alleged diminution in the value of the homes attributable to the defective lakes.  This is also sufficient to trigger the duty to defend under the policies.  Regarding the lakes, the ninth amended petition alleged:

> [T]he Lakes and wall were not property designed and constructed . . . , the walls had excessive cracks and displacements . . . , water was escaping under and around the sloped paving, between the sloped paving and the wall, at the outfall structure, perhaps through the clay liner at greater depths, through cracks in the wall, and other similar problems.

> [T]he condition of the Lakes had substantially decreased the value of the Chelsea Harbour subdivision; specifically, a loss of value from approximately $6.5 million to $2.25 million dollars for a loss in diminution of value in the range of $3.75 to $4.5 million dollars.

> Plaintiffs will show that the problems with the Lakes have affected the value of their property and their homes. Plaintiffs maintain a

6

good faith belief that the condition of the Lakes has in the past, and continues, to cause damage to the value of their residential properties.

Plaintiffs contend in this lawsuit that the failure of the Lakes directly affects the value of the homes in the community. . . . Plaintiffs' homes and properties have suffered diminution of value due to the past, present and future conditions of the Lakes.

Defendants owed multiple duties of care regarding . . . , construction of the Lakes, and the protection of Plaintiffs' property interests, including but not limited to the repair work performed on the Lakes . . . . Defendants were . . . negligent in the hiring and supervision of the entities that both constructed and repaired the Lakes. . . . Plaintiffs would show that all Defendants breached the above described duties and that such acts . . . constitute the proximate cause of Plaintiffs' damages, including cost of repair and diminution of value to their homes.

Plaintiffs would also show that Defendants failed to construct and/or repair the Lakes in a good and workmanlike manner.

Under Texas law, allegations of unintended construction defects or faulty-workmanship constitute allegations of "property damage" under a CGL policy sufficient to trigger an insurer's duty to defend. *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 4 (Tex. 2007). Accordingly, the petition alleges property damage to the lakes that resulted in diminution in the value of underlying-action plaintiffs' homes.

Mid-Continent contends that, even if the ninth amended petition alleges property damage to the lakes, these allegations do not trigger the duty to defend because underlying-action plaintiffs did not possess an ownership interest in the lakes. This contention is unavailing.

Our court has previously rejected a similar attempt by Mid-Continent to read an ownership requirement into a CGL policy's "damages because of . . . 'property damage'" provision. In *Mid-Continent Cas. Co. v. Bay Rock Operating*

No. 11-20219

*Co.*, 614 F.3d 105 (5th Cir. 2010), working-interest owners of a Texas oil well engaged Hollimon Oil Corporation (HOC) to operate the well, with HOC in turn engaging Bay Rock to supervise and manage drilling the well. The well suffered a blowout, causing property damage, and HOC incurred costs as a result. The costs incurred by HOC were covered under a well-control policy with St. Paul Surplus Line Insurance Company. St. Paul (as HOC's subrogee) and the working-interest owners filed an action in state court against Bay Rock, claiming it negligently caused the blowout. A jury found Bay Rock negligent and awarded damages to St. Paul and the working-interest owners.

Bay Rock had CGL and umbrella policies with Mid-Continent, which sought a declaration in federal court that the damages awarded against Bay Rock were not covered under the policies. Summary judgment was awarded Bay Rock. On appeal, Mid-Continent contended, *inter alia*, that the damages awarded against Bay Rock did not constitute "damages because of . . . 'property damage'" under the policies, because, unlike the working-interest owners, HOC did not have an ownership interest in the damaged property. Our court held this contention without merit: "Nothing in the Policies require the claimant—HOC—to have an ownership interest in the property that was damaged for coverage to exist." *Id.* at 111.

Likewise, the policies at issue here do not require the underlying-action plaintiffs to have an ownership interest in the property allegedly damaged in order for Mid-Continent to have a duty to defend. And under Texas law, "we must give the policy's words their plain meaning, without inserting additional provisions into the contract". *Nat'l Union Fire Ins. Co. v. Crocker*, 246 S.W.3d 603, 606 (Tex. 2008). Furthermore, the only relevant inquiry here is whether, under the eight-corners rule, there is a duty to defend, not whether the underlying-action plaintiffs had standing to sue for damage to the lakes. *See Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 31 (Tex. 2008)

8

(insured has "right to a defense against both meritorious and nonmeritorious claims for property damage").

## B.

Mid-Continent contends defense costs should be apportioned *pro rata* across all five of the policies. Defendants counter they are entitled instead to choose any one of the policies under which Mid-Continent is to provide a complete defense. As stated, the policies for the last three years contained higher deductible amounts, and the deductible also applied to defense costs.

Under the policies, the event that must take place for, *inter alia*, the duty to defend to be triggered is "property damage". Underlying-action plaintiffs alleged the lakes were defective and their property damaged throughout the five policy periods. Texas courts have rejected the *pro rata* method for calculating an insurer's duty to defend when more than one policy is triggered by a claim. *See Tex. Prop. & Cas. Ins. Guar. Ass'n v. Sw. Aggregates, Inc.*, 982 S.W.2d 600, 604-07 (Tex. App.—Austin 1998, no pet.); *CNA Lloyds of Texas v. St. Paul Ins. Co.*, 902 S.W.2d 657, 661 (Tex. App.—Austin 1995, writ dism'd). The reasoning behind this rule is that, when an insurer's policy is triggered, "the insurer's duty is to provide its insured with a complete defense. This is because the contract obligates the insurer to *defend* its insured, not to provide a pro rata defense." *Sw. Aggregates*, 982 S.W.2d at 606 (emphasis in original). Accordingly, the district court did not err by permitting defendants to select any one of the triggered policies for their defense.

## III.

For the foregoing reasons, the judgment is AFFIRMED.