Robin BERGEN d/b/a R & D
Enterprises, Plaintiff,

v.

GRINNELL MUTUAL REINSURANCE
COMPANY, Defendant.

Civ. No. 12–2973 (RHK/JJG).

United States District Court,
D. Minnesota.

May 6, 2013.

Mark D. Covin, Jessica L. Klander, Bassford Remele, PA, Minneapolis, MN, for Plaintiff.

Beth A. Jenson Prouty, Stephen M. Warner, Arthur, Chapman, Kettering, Smetak & Pikala, P.A., Minneapolis, MN, for Defendant.

## MEMORANDUM OPINION AND ORDER

RICHARD H. KYLE, District Judge.

### INTRODUCTION

In this insurance action, Plaintiff Robin Bergen d/b/a R & D Enterprises ("Bergen") alleges that his former insurer, Defendant Grinnell Mutual Reinsurance Company ("Grinnell"), must defend and indemnify him against claims brought by a third-party in Minnesota state court. Bergen now moves for partial summary judg-

ment on the duty to defend, and Grinnell cross-moves for summary judgment on the duties to defend and indemnify. For the reasons that follow, Bergen's Motion will be granted and Grinnell's Motion denied.

## BACKGROUND

The key facts are undisputed. In 2002, Terry Karger hired Bergen, a contractor, to build a home in Frazee, Minnesota. Bergen served as the general contractor on the project and subcontracted work on the home's foundation to Carlson Custom Builders ("Carlson"). The home was completed in mid–2002.

At the time of construction, Bergen was insured by Grinnell under a commercial general liability (CGL) insurance policy. The policy provided that Grinnell would "pay those sums that [Bergen] becomes legally obligated to pay as damages because of ... 'property damage' to which this insurance applies." It defined "property damage" as "physical injury to tangible property, including all resulting loss of use of that property," but applied only to property damage (1) "caused by an 'occurrence,'" meaning "an accident, including continuous or repeated exposure to substantially the same general harmful conditions," and (2) that "occur[red] during the policy period." The policy was in force from the time of construction until September 2006, when Bergen switched his insurance to Midwest Family Mutual Insurance Company ("Midwest").

In October 2008, Jay Arvig purchased the home from Karger. Approximately two years later, he discovered a basement wall was bulging. Subsequent home inspections revealed that the home was improperly constructed, causing some of its walls to sway and bow due to improper "backfilling" of the foundation.

On August 4, 2011, Arvig sued Bergen and Carlson in the Becker County, Minnesota District Court, asserting two claims: (1) breach of warranty under Minnesota Statutes § 327A.01 *et seq.* (against Bergen)[1] and (2) negligence (against Bergen and Carlson). Bergen tendered the claim to Grinnell, which disclaimed any duty to indemnify or defend. In its denial letter, Grinnell provided several reasons for its decision, but only one is relevant here, as it is the only basis upon which Grinnell now relies:

The Complaint alleges that the home was substantially completed in June or July of 2002. [Arvig] purchased the home on October 29, 2008. However, your Commercial General Liability policy with Grinnell terminated on September 2, 2006. As a result, in the event that any property damage resulted to [Arvig], that property damage would have occurred after your policy period.

(Covin Decl. Ex. C.) Bergen later asked Grinnell to revisit its decision, but the insurer declined.

On November 27, 2012, Bergen commenced the instant action, asserting that Grinnell had wrongly denied coverage and, hence, breached the insurance policy. He also seeks a declaration that Grinnell is obligated to defend and indemnify him in the underlying state-court action.[2] Grinnell now moves for summary judgment, arguing that it owes no duty to defend or indemnify, and Bergen cross-moves for

---

1. The statute provides that a homebuilder must warrant, for ten years after construction, that the dwelling is "free from major construction defects due to noncompliance with building standards." Minn.Stat. § 327A.02, subd. 1(c).

2. Online court records reveal that the underlying action remains pending and is scheduled for a jury trial on May 28, 2013. Midwest has been defending Bergen in that case.

summary judgment on Grinnell's duty to defend.[3] The Motions have been fully briefed and are ripe for disposition.

## STANDARD OF REVIEW

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. *Id.* at 322, 106 S.Ct. 2548; *Whisenhunt v. Sw. Bell Tel.,* 573 F.3d 565, 568 (8th Cir. 2009). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. *Weitz Co., LLC v. Lloyd's of London,* 574 F.3d 885, 892 (8th Cir.2009); *Carraher v. Target Corp.,* 503 F.3d 714, 716 (8th Cir.2007). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Wingate v. Gage Cnty. Sch. Dist., No. 34,* 528 F.3d 1074, 1078–79 (8th Cir.2008).

Where, as here, the Court confronts cross-motions for summary judgment, this approach is only slightly modified. When considering Bergen's Motion, the Court views the record in the light most favorable to Grinnell, and when considering Grinnell's Motion, the Court views the record in the light most favorable to Bergen. "Either way, summary judgment is proper if the record demonstrates that there is no genuine issue as to any material fact." *Seaworth v. Messerli,* Civ. No. 09–3437, 2010 WL 3613821, at *3 (D.Minn. Sept. 7, 2010) (Kyle, J.), *aff'd,* 414 Fed.Appx. 882 (8th Cir.2011) (*per curiam*).

## ANALYSIS

### I. General principles

■ An insurer owes its insured two duties under Minnesota law:[4] the duty to defend and the duty to indemnify. *E.g., St. Paul Fire & Marine Ins. Co. v. Nat'l Chiropractic Mut. Ins. Co.,* 496 N.W.2d 411, 415 (Minn.Ct.App.1993). "In determining the existence of [a duty to defend], a court will compare the allegations in the *complaint* in the underlying action with the relevant language in the *insurance policy.*" *Meadowbrook, Inc. v. Tower Ins. Co.,* 559 N.W.2d 411, 415 (Minn.1997) (emphases in original). A duty to defend exists "if any part of the claims asserted ... in the underlying case arguably falls within the scope of coverage." *Ross v. Briggs and Morgan,* 540 N.W.2d 843, 847 (Minn. 1995) (internal quotation marks omitted). The existence of a duty to defend is a question of law for the Court. *E.g.,*

3. Bergen's Motion (Doc. No. 15) is somewhat unclear. It is styled as a "Motion for Summary Judgment," suggesting he seeks summary judgment on *all* issues in this case—that is, both the duty to defend *and* the duty to indemnify. Indeed, had he sought summary judgment only on the duty to defend, the Court would have expected the Motion to be styled as one for *partial* summary judgment. His briefs, however, focus on the duty to defend, and his proposed order addresses only defense and not indemnification. Accordingly, the Court will treat Bergen's Motion as seeking only partial summary judgment on the duty to defend.

4. State law governs the interpretation of insurance policies. *Nat'l Union Fire Ins. Co. of Pittsburgh v. Terra Indus., Inc.,* 346 F.3d 1160, 1164 (8th Cir.2003). Both parties agree that Minnesota law applies to this action.

*Franklin v. W. Nat'l Mut. Ins. Co.*, 574 N.W.2d 405, 406 (Minn.1998).

The policy at issue here covers "property damage" caused by an "occurrence," if that property damage occurred during the policy period. Grinnell argues that these provisions conclusively establish it owes no duty to defend (or indemnify) Bergen in the underlying action, because in Minnesota coverage is triggered only once the *underlying plaintiff* has suffered damage; it does not matter when the wrongful act causing that damage was committed. In other words, while Bergen's (purportedly) defective construction—which took place during the policy period—may have led to the property damage asserted in the underlying action, *Arvig* cannot have suffered any damage until he purchased the home, more than two years after the policy expired. Accordingly, Grinnell contends that the underlying claims do not give rise to coverage and, hence, it is not obligated to defend or indemnify Bergen. (*See* Def. Mem. at 8 ("Arvig was actually injured on or after the date when he purchased the subject home. While damage to the property may have occurred before that date, ... [t]here was no actual injury to Arvig before he purchased the home.").)

## II. The "owner-claimant rule"

The principle Grinnell invokes has been referred to by insurance commentators as the "owner-claimant rule." Scott C. Turner, *Insurance Coverage of Construction Disputes* § 6:41 (2012); *see also* 3 Allan D. Windt, *Insurance Claims & Disputes* § 11:4 (6th ed. 2013). Grinnell suggests that the Minnesota Supreme Court has endorsed this rule, citing *Singsaas v. Diederich*, 307 Minn. 153, 238 N.W.2d 878 (1976), and *Jenoff, Inc. v. New Hampshire Insurance Co.*, 558 N.W.2d 260 (Minn. 1997). (Def. Mem. at 6.) *Singsaas* noted that coverage under an occurrence-based insurance policy is triggered not when the wrongful act is committed, but rather when *"the complaining party* was damaged." 238 N.W.2d at 880 (emphasis added). *Jenoff* quoted *Singsaas* for the same proposition. 558 N.W.2d at 261; *see also In re Silicone Implant Ins. Coverage Litig.*, 667 N.W.2d 405, 415 (Minn.2003) (citing *Singsaas:* "[T]he time of the occurrence is not the time the wrongful act was committed but the time the complaining party was actually damaged."). The key term in these cases is "complaining party." Grinnell argues that by using this term, the Minnesota Supreme Court requires the *underlying plaintiff* to have suffered injury during the policy period in order for coverage to exist. Since Arvig (the "complaining party" and underlying plaintiff) could not have been damaged until he owned the home at issue, Grinnell contends there can be no coverage for Arvig's claims.

While there is some superficial appeal to this argument, it does not withstand close scrutiny. True, *Singsaas* and *Jenoff* utilized the phrase "complaining party," but neither of those cases turned on *who* was asserting the claim for damages. In *Singsaas*, a construction company was insured under an occurrence-based policy from November 1971 to July 1972. The company negligently installed an elevator while the policy was in force, but the plaintiff was not injured until the elevator failed in August 1972, after the policy had expired. *Singsaas* found coverage lacking not because of *who* had suffered damages, but rather because the damages were for injuries *that clearly occurred after the policy period had expired.* 238 N.W.2d at 880–81 (no coverage because policy contained an "explicit requirement that the damages occur within the policy period"). Similarly, *Jenoff* involved the negligent installation of a fire-suppression system during the policy period, which did not result in damage (a

fire) until nearly 20 years later. There, as in *Singsaas,* the decision did not turn on *who* had suffered damages, but rather the fact that the plaintiff sought damages for injuries occurring beyond the policy term. 558 N.W.2d at 263.

Careful review makes clear, therefore, that the identity of the "complaining party" had no impact on *Singsaas* and related decisions, and use of that term was simply *obiter dictum,* "something said in passing" as shorthand to refer to the underlying plaintiffs. *Brink v. Smith Cos. Constr., Inc.,* 703 N.W.2d 871, 878 (Minn.Ct.App. 2005). *Singsaas* and its progeny did not address the precise issue presented here: whether damage to property caused by an occurrence while an insurance policy was in force is covered when the damage is asserted by a third-party who obtained the property after the policy expired. And this is likely why, despite pointing out *Singsaas's* and *Jenoff's* use of the term "complaining party," Grinnell acknowledges that the issue presented here "is one of first impression for Minnesota courts." (Def. Mem. at 7.) The Court agrees with that statement—the parties have not cited, and the Court's own research has not uncovered, any Minnesota case addressing the precise issue presented here.[5]

This does not mean the Court is without guidance, however. "Most CGL insurance written in the United States is written on [standard insurance-industry] forms." *Hartford Fire Ins. Co. v. California,* 509 U.S. 764, 772, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993). While no Minnesota court has tackled the precise issue here, others courts interpreting CGL policies, with language identical (or nearly identical) to that

in Grinnell's policy, have been called upon to do so. Perhaps not surprisingly, they have reached inconsistent results.

Some courts have adopted the owner-claimant rule and held that only the party owning the property when it is damaged by the insured may later seek to impose coverage for that damage. *See, e.g., Great Lakes Dredge & Dock Co. v. City of Chi.,* 260 F.3d 789, 795 (7th Cir.2001); *Johnson v. Studyvin,* 828 F.Supp. 877, 882–83 (D.Kan.1993) ("[A] general liability policy does not cover claims against an insured for property damage by claimants who did not own the property during any policy period."); *Hoppy's Oil Serv., Inc. v. Ins. Co. of N. Am.,* 783 F.Supp. 1505, 1508 (D.Mass.1992). Indeed, Grinnell directs the Court to *Grinnell Mutual Reinsurance Co. v. Thies,* 755 N.W.2d 852 (N.D. 2008), in which the North Dakota Supreme Court found no coverage where the underlying claimant did not own the damaged property during the policy period.

But a majority of courts have rejected the owner-claimant rule, reasoning that "there is nothing in the insurance clause or the policy definition of 'property damage' which supports such a limitation on coverage." Scott C. Turner, *Insurance Coverage of Construction Disputes* § 6:41 (2012); *accord, e.g.,* 1 Tod Zuckerman & Mark Raskoff, *Environmental Insurance Litigation: Law and Practice* § 6:41 (2012) ("Does a CGL policy cover ... property damage occurring during the policy period, if ... the underlying claimant/plaintiff did not own the damaged property at the time of the property damage[?] Courts are overwhelmingly pro-

---

5. Bergen contends the issue is not one of first impression and that "there is a wealth of case law that supports" his position. (Pl. Mem. in Opp'n at 8.) But none of the cases he cites addressed the precise issue here; rather, they stand for the unremarkable proposition that

damage occurring during the policy period but undiscovered until after the policy has expired is covered. *See, e.g., Fairview Hosp. & Health Care Servs. v. St. Paul Fire & Marine Ins. Co.,* 518 N.W.2d 41, 44 (Minn.Ct.App. 1994), *aff'd,* 535 N.W.2d 337 (Minn.1995).

policyholder on this issue."). As noted by the Massachusetts Supreme Judicial Court in *Trustees of Tufts University v. Commercial Union Insurance Co.*:

> The insurers argue that the proper inquiry under the[ ] policies is not whether property damage occurred during the policy period, but whether the entity making the claim sustained harm during the policy period. Thus, they argue that the [trial] judge was correct in ruling that, since [the underlying plaintiff] did not acquire the property until 1977, it could not have sustained harm until after the last policy period in 1975. We disagree with this interpretation of the policies. *The policy language does not require that [the underlying plaintiff] have a property interest in the [damaged] property during the policy period, but only that the property damage itself occur during that time. Had the insurers intended to exclude coverage whenever the underlying plaintiff did not own the property at the time of the occurrence, the insurers could have expressed such an exclusion.*

415 Mass. 844, 616 N.E.2d 68, 72 (1993) (emphasis added); *accord, e.g., Mid–Continent Cas. Co. v. Acad. Dev., Inc.,* 476 Fed.Appx. 316, 321 (5th Cir.2012) (*per curiam*) ("Nothing in the Policies require[s] the claimant ... to have an ownership interest in the property that was damaged for coverage to exist.") (quoting *Mid–Continent Cas. Co. v. Bay Rock Operating Co.,* 614 F.3d 105, 111 (5th Cir.2010)); *Great Lakes Chem. Corp. v. Int'l Surplus Lines Ins. Co.,* 638 N.E.2d 847, 854 (Ind.Ct.App. 1994) ("[The insurers] argue that no dam-

age to the [underlying plaintiff] occurred until 1989, long after the policies had expired.... [The insurers], however, confuse damage to the [plaintiff] and damage to [property]. The policies provide coverage for damage to property, as long as that damage occurs during the policy period.... When the [underlying plaintiff] incurred 'damages' ... is not relevant to when damage to property occurred for purposes of determining coverage under the policies.").[6]

Although not cited by the parties, there is at least one case on all-fours (both factually and legally) with the instant dispute. In *Village Homes of Colorado, Inc. v. Travelers Casualty & Surety Co.,* 148 P.3d 293 (Colo.Ct.App.2006), the defendant issued a CGL policy to the plaintiff, a homebuilder called Village Homes ("Village"). The relevant policy provisions were identical to Grinnell's policy here—Village was insured for "sums [it] becomes legally obligated to pay as damages because of ... 'property damage,'" if (1) the property damage was "caused by an 'occurrence'" and (2) the property damage "takes place during the policy period." *Id.* at 295.

As here, Village built homes for individuals while the CGL policy was in force, who then sold to others after the policy period ended. The subsequent buyers later noticed problems with their homes allegedly caused by Village's defective construction. They sued, and Village tendered the claims to its insurer, Travelers, which denied coverage. After settling the underlying cases, Village sued Travelers for a declaration that coverage existed. Construing the plain language of

**6.** *See also, e.g., E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.,* 241 F.3d 154, 170 (2d Cir. 2001); *Bradley v. Cont'l Cas. Co.,* No. C 11–00292, 2011 WL 1748672, at *5 n. 3 (N.D.Cal. Apr. 22, 2011); *Burt Rigid Box Inc. v. Travelers Prop. Cas. Corp.,* 126 F.Supp.2d 596, 636–37 (W.D.N.Y.2001), *aff'd in relevant part,* 302 F.3d 83 (2d Cir.2002); *Renco Grp., Inc. v. Certain Underwriters at Lloyd's, London,* 362 S.W.3d 472, 480 (Mo.Ct.App.2012); *Hoang v. Assurance Co. of Am.,* 149 P.3d 798, 803–04 (Colo.2007); *Standard Fire Ins. Co. v. Spectrum Comm'y Ass'n,* 141 Cal.App.4th 1117, 46 Cal.Rptr.3d 804, 811–16 (2006).

the policy, the trial court agreed with Village, and Travelers appealed, arguing (as does Grinnell here) that "coverage was not triggered because the homeowners acquired the homes after the expiration of the insurance policy, and ... there is no coverage because the homeowners did not suffer any actual harm during the policy period." *Id.* at 296. The Colorado Court of Appeals rejected these arguments and affirmed. It held that the policy unambiguously afforded coverage, as it nowhere stated that coverage was limited to the party owning the property when the damage occurred. *Id.* at 297–99. The Colorado Supreme Court adopted the same reasoning less than a year later. *See Hoang,* 149 P.3d at 803 ("[A]n occurrence policy is triggered when the property is first [damaged]; the controlling question is whether the defendant damaged the property during the policy period, [and] not whether the plaintiff owned it at that time.").

### III. Minnesota would reject the owner-claimant rule

■ The Court finds the logic of *Village Homes, Tufts University,* and similar cases persuasive. But the Court's view of the "better" law is not dispositive. Because this case is before the Court on diversity jurisdiction, and because all parties agree that Minnesota law applies to the instant dispute, the Court must decide this case as it would be decided by the Minnesota Supreme Court. *E.g., Doe v. Baxter Healthcare Corp.,* 380 F.3d 399, 407 (8th Cir.2004). Prior decisions of the Minnesota Supreme Court are binding, but where (as here) that court has not yet addressed an issue, this Court must predict how the state's highest court would rule. *E.g., B.B. v. Cont'l Ins. Co.,* 8 F.3d 1288, 1291 (8th Cir.1993). For several reasons, the Court concludes that the Minnesota Supreme Court would reject the owner-claimant rule, both generally and on the facts of this case.

■ *First,* under Minnesota law, unambiguous insurance policy language must be interpreted "in accordance with its plain and ordinary meaning." *Ill. Farmers Ins. Co. v. Glass Serv. Co.,* 683 N.W.2d 792, 799 (Minn.2004). Grinnell's policy (like all standard CGL policies) provided that Bergen was insured for "those sums [he] becomes legally obligated to pay as damages because of ... 'property damage,'" if that property damage (1) was "caused by an 'occurrence'" and (2) "occur[red] during the policy period." This language is unambiguous. Coverage must turn on whether *property was damaged* during the policy period, and not *when* the insured's liability is assessed or *who owned the property* at that time. If it can be shown that property was damaged during the policy period and that damage was caused by an occurrence, no policy language precludes coverage simply because the underlying plaintiff did not own the property at that time. The Court simply cannot read a provision into the policy that does not exist. *See, e.g., Garriott Crop Dusting Co. v. Superior Ct. of Kern Cnty.,* 221 Cal. App.3d 783, 270 Cal.Rptr. 678, 682 (1990) ("[U]nder the terms of the insurance policies ..., the event triggering coverage is one that causes 'physical injury to or destruction of tangible property' during the policy period. Nowhere do the policies say to whom that property must belong[.] In other words, the policies themselves do not expressly require that the eventual claimant own the property at the time the property is damaged for coverage to ensue; they merely require that the damage, the 'physical injury to ... tangible property,' take place during the policy period."); *see also Fairview Hosp. & Health Care Servs. v. St. Paul Fire & Marine Ins. Co.,* 518 N.W.2d 41, 44 (Minn.Ct.App.1994) ("The triggering event for coverage is the actual

damage."), *aff'd,* 535 N.W.2d 337 (Minn. 1995).[7]

*Second,* rejecting the owner-claimant rule comports with the purpose behind occurrence-based policies: to "protect a policyholder from liability for *any act done* while the policy was in effect." *Fairview Hosp.,* 518 N.W.2d at 44 (emphasis added) (citing *St. Paul Fire & Marine Ins. v. Barry,* 438 U.S. 531, 535 n. 3, 98 S.Ct. 2923, 57 L.Ed.2d 932 (1978)); *accord, e.g., Hoang,* 149 P.3d at 802 ("An 'occurrence policy' confers coverage for injury or damage that occurs during the policy period, regardless of when the claim is made."). This underscores that the focus must be on the result of the insured's conduct, not the party harmed by it or when that party sues. Indeed, Minnesota courts have repeatedly recognized that an occurrence-based policy is triggered even when damage "is not diagnosable, compensable, or manifest during the policy period[,] as long as it can be determined, even retroactively, that some [damage] did occur during the policy period." *In re Silicone,* 667 N.W.2d at 415 (internal quotation marks omitted). As one court has stated, "[t]o require the [underlying plaintiff's] claim ... to arise during the policy period would unduly transform [an occurrence-based CGL policy] into a 'claims made' policy." *Standard Fire,* 46 Cal.Rptr.3d at 815 (quoting *Century Indem. Co. v. Hearrean,* 98 Cal. App.4th 734, 120 Cal.Rptr.2d 66, 72 (2002)).

*Third,* adopting the owner-claimant rule would lead to absurd results. *See Mead v. Seaboard Sur. Co.,* 198 Minn. 476, 270 N.W. 563, 565 (1936) (insurance policy, like any other contract, should be interpreted to avoid "absurd or unjust results"). Assume, for example, that Karger had not sold the property to Arvig, but rather still owned it when he discovered the construction defects. Had Karger sued, Bergen would be entitled to a defense from Grinnell, as the insurer acknowledges. (Def. Mem. at 6.) But Grinnell claims that Bergen is *not* entitled to a defense here because Karger—on his own accord—sold the property to Arvig before the damage was discovered. "We do not see any reason why the existence of coverage *vel non* should turn on fortuitous events or conditions wholly outside the insured's control." *Garriott,* 270 Cal.Rptr. at 685; *accord, e.g.,* Tufts *University,* 616 N.E.2d at 73–74.

■ *Fourth,* and finally, "the Minnesota rules of insurance policy interpretation require policies to be read in favor of finding coverage," *Gen. Cas. Co. of Wis. v. Wozniak Travel, Inc.,* 762 N.W.2d 572, 576 (Minn.2009), and "public policy dictates that a construction be given insurance terms which avoids ... the frustration of the reasonable expectations of the insured," *Athan v. Fireman's Fund Am. Life Ins. Co.,* 309 Minn. 568, 244 N.W.2d 271, 273 (1976) (*per curiam* ). A reasonable insured reading Grinnell's policy would have no reason to suspect that coverage would terminate simply because the property damaged by the insured changed hands after the policy period ended. *See Hoang,* 149 P.3d at 803; *Century Indem.,* 120 Cal.Rptr.2d at 70 n. 2.

## IV. The outcome of the instant Motions

As noted, Grinnell has moved for summary judgment based entirely on the own-

---

**7.** Notably, Grinnell does not appear to dispute that defective construction ultimately resulting in property damage constitutes an "occurrence." *See, e.g., Aten v. Scottsdale Ins. Co.,* 511 F.3d 818, 820 (8th Cir.2008) (applying Minnesota law) (property damage resulting from construction defects were covered occurrences); *O'Shaughnessy v. Smuckler Corp.,* 543 N.W.2d 99, 105 (Minn.Ct.App.1996) (same), *abrogated on other grounds by Gordon v. Microsoft Corp.,* 645 N.W.2d 393 (Minn. 2002).

er-claimant rule: Arvig did not own the home until after the policy expired, it argues, and hence his claims cannot trigger coverage under Bergen's policy. For the reasons set forth above, the Court rejects this argument. Accordingly, Grinnell's Motion must be denied.

Bergen has cross-moved for summary judgment on the duty to defend. An insured is entitled to a defense if "if any part of the claims asserted . . . in the underlying case *arguably* falls within the scope of coverage." *Ross*, 540 N.W.2d at 847 (emphasis added) (internal quotation marks deleted). There is no dispute that Arvig's home has suffered "property damage," and there is also no dispute that Bergen's defective construction caused that damage and, hence, constitutes an "occurrence" under the policy. (*See* note 6, *supra.*) All that remains for Bergen to establish coverage, therefore, is that the damage occurred during the policy period.

But ultimate *coverage* is not the issue, at least at this juncture. Coverage implicates the duty to indemnify, and here Bergen seeks summary judgment on the duty to defend, which is far broader—Arvig's claims must only *arguably* fall within the scope of coverage to trigger this duty. Arvig need not have alleged in the underlying action that the damage to his home occurred during the policy period in order to trigger Grinnell's defense obligations. *E.g., Donnelly Bros. Constr. Co. v. State Auto Prop. & Cas. Ins. Co.*, 759 N.W.2d 651, 655–56 (Minn.Ct.App.2009) ("[A]n insurer owe[s] its insured builders a duty to defend against defective-construction complaints even though the complaints [do] not specifically allege or provide any evidence that damage occurred during the policy period.") (citing *Westfield Ins. Co. v. Kroiss*, 694 N.W.2d 102, 106 (Minn.Ct.App.

2005)).[8] Because it is undisputed Arvig's home suffered "property damage" caused by an occurrence, the Court determines that Bergen has established Grinnell owed a duty to defend the underlying action, which it has breached. Bergen's cross-Motion will therefore be granted.

Lastly, Bergen argues that he is entitled to recover all fees and costs expended in the underlying litigation and in prosecuting this case. (Pl. Mem. at 14–15.) Grinnell has not responded to this argument, which appears to be well-taken. *See, e.g., Nelson v. Am. Home Assurance Co.*, Civ. No. 11–1161, 2011 WL 6151519, at *5 (D.Minn. Dec. 12, 2011) (Kyle, J.) ("The law in Minnesota is well-settled that attorneys' fees and costs are recoverable when an insurer breaches its duty to defend."); *In re Silicone*, 667 N.W.2d at 422–25. However, the amount of those fees and costs has not been briefed and must await resolution on another day.

### CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED:**

1. Grinnell's Motion for Summary Judgment (Doc. No. 13) is **DENIED;**

2. Bergen's Motion for Summary Judgment (Doc. No. 15) is **GRANTED,** and the Court **DECLARES** and **ADJUDGES** that Grinnell breached its duty to defend Bergen in the action entitled *Jay A. Arvig v. Robin Bergen, individually and d/b/a R & D Enterprises and Carlson Custom Builders, Inc.*, pending in the Becker County, Minnesota District Court, and must provide Bergen with a defense in that action; and

---

**8.** Regardless, there is evidence in the record indicating that property damage occurred during construction. (*See* Covin Decl. Ex. G at 2–4.)

3. Bergen is entitled to recover fees and costs reasonably incurred in this action and in defending the underlying action.