# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 4, 2010

No. 09-50984

Lyle W. Cayce
Clerk

MID-CONTINENT CASUALTY COMPANY,

Plaintiff - Appellant

v.

BAY ROCK OPERATING COMPANY; FELICIANA CORPORATION;
DUNCAN UNDERWOOD; EVERETT DESHA; SEELIGSON OIL
COMPANY, LTD.; ST. PAUL SURPLUS LINES INSURANCE COMPANY,
as insurer of Hollimon Oil Company and J. Charles Hollimon, Inc. and as
alleged subrogee/real party in interest of Hollimon Oil Corporation

Defendants - Appellees

Appeal from the United States District Court
for the Western District of Texas

Before DAVIS, SMITH, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

Appellant Mid-Continent Casualty Company ("Mid-Continent") appeals the district court's grant of summary judgment in favor of Appellees Bay Rock Operating Company ("Bay Rock"), the Feliciana Corporation, Duncan Underwood, Everett DeSha, the Seeligson Oil Company, and St. Paul Surplus Lines Insurance Company ("St. Paul"), as subrogee of Hollimon Oil Corporation ("HOC"). We AFFIRM.

## I. FACTUAL AND PROCEDURAL HISTORY

Feliciana Corporation, Duncan Underwood, Everett DeSha, and the Seeligson Oil Company (collectively, the "working interest owners") owned a Texas oil well named Striebeck No. 1. The working interest owners designated HOC as the operator of the well, and HOC hired Bay Rock to supervise and manage the drilling of the well. Under Bay Rock's supervision, Striebeck No. 1 suffered a blowout, causing property damage and the loss of gas from the well. In the wake of the blowout, Bay Rock contacted Cudd Pressure Control to obtain well-control services. HOC incurred the costs to control, repair, evaluate, and complete the well after the blowout. HOC had a well-control policy with St. Paul, and St. Paul paid the costs incurred by HOC pursuant to a settlement agreement after HOC demanded coverage for the costs.

Thereafter, St. Paul and the working interest owners brought suit in Texas state court, accusing Bay Rock of negligently causing the blowout. A state court jury found that Bay Rock was negligent and awarded St. Paul and the working interest owners: (1) the costs incurred to control the well; (2) the costs incurred to repair, evaluate, and complete the well; and (3) the value of the gas lost in the blowout. The San Antonio Court of Appeals affirmed, and the Texas Supreme Court denied Bay Rock's petition for review and its petition for rehearing.[1]

Bay Rock had a commercial general liability policy (the "CGL Policy") and an umbrella policy (the "Umbrella Policy") (collectively, the "Policies") with Mid-Continent. Mid-Continent defended Bay Rock in the state court action under a reservation of rights letter. After judgment was entered against Bay Rock, Mid-Continent brought this diversity action in federal district court,

---

[1] *Bay Rock Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 298 S.W.3d 216 (Tex. App.-San Antonio), *pet. denied*, 2010 Tex. LEXIS 336 (Tex. 2010) (denying motion for rehearing).

seeking a declaration that Bay Rock's damages were not covered by the Policies. Mid-Continent and Appellees both moved for summary judgment. The district court granted Appellees' motion for summary judgment and denied Mid-Continent's motion. This appeal followed.

## II. STANDARD OF REVIEW

We review the district court's grant of summary judgment de novo, and we may affirm on any grounds supported by the record. *Berquist v. Washington Mut. Bank*, 500 F.3d 344, 348-49 (5th Cir. 2007). When reviewing a grant of summary judgment, the court views all facts and evidence in the light most favorable to the non-moving party. *United Fire & Cas. Co. v. Hixson Bros.*, 453 F.3d 283, 285 (5th Cir. 2006). However, to avoid summary judgment, the non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial. *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006). Because both Mid-Continent and Appellees moved for summary judgment, this court reviews "each . . . motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001).

## III. DISCUSSION

Mid-Continent raises a number of arguments for reversing the district court's grant of summary judgment. First, Mid-Continent argues that St. Paul had no right to bring the underlying state court action. Second, Mid-Continent asserts that the damages awarded against Bay Rock do not fall within the Policies' general grants of coverage. Finally, Mid-Continent argues that certain

3

exclusions or limitations remove from coverage the damages at issue. We will address each of Mid-Continent's arguments in turn.[2]

A. St. Paul's Subrogation Rights

Mid-Continent argues that St. Paul lacked the legal capacity to bring the underlying liability suit as HOC's subrogee and, therefore, there is no coverage for the damages awarded against Bay Rock. The district court found that the issue of St. Paul's right of subrogation was litigated in the state court action and that Mid-Continent was barred from re-litigating it. Under Texas law, a party's "legal authority to sue or be sued, is an issue" that cannot be attacked in "a separate proceeding." *See Presley v. Republic Energy Drilling, L.L.C.*, No. 2-07-225-CV, 2008 WL 4053002, at *3-*4 (Tex. App.-Fort Worth Aug. 29, 2008, no pet.).[3] Nevertheless, Mid-Continent argues that it is not collaterally estopped from re-litigating St. Paul's subrogation right because it was not in privity with Bay Rock. We disagree.

An insurer in a coverage case will be barred from re-litigating a particular issue from the underlying liability case if: (1) the issue raised in the coverage suit was raised and determined in the liability suit; (2) the issue determined in the liability suit was essential to the judgment in the liability suit; and (3) the necessary requirement of privity exists between the insurer and the insured. *See Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 802 (Tex. 1992); *Columbia Mut. Ins. Co. v. Fiesta Mart, Inc.*, 987 F.2d 1124, 1127 (5th Cir. 1993). The

---

[2] The district court applied Texas law, and the parties do not appeal the district court's application of Texas law. Accordingly, we will apply Texas law here. *See Tifford v. Tandem Energy Corp.*, 562 F.3d 699, 705 n.2 (5th Cir. 2009).

[3] According to the comments to Texas Rule of Appellate Procedure 47.7, "[a]ll opinions and memorandum opinions in civil cases issued after the 2003 amendment have precedential value." Therefore, even though this decision is unpublished, it has precedential value under Texas law.

requisite degree of privity between an insurer and its insured can exist if: (1) the insurer controlled the insured's defense in the liability suit; and (2) the insurer and the insured do not hold conflicting positions with respect to the issue determined in the liability suit. *See State Farm Lloyds v. Borum*, 53 S.W.3d 877, 886-88 (Tex. App.-Dallas 2001, pet. denied) (showing that privity can be established if the insurer controls an insured's litigation and is not in conflict with the insured as to the particular issue to be re-litigated); *see also Benson & Ford, Inc. v. Wanda Petroleum Co.*, 833 F.2d 1172, 1174 (5th Cir. 1987) (citing "a liability insurer assum[ing] control of a defense" as an example of the control necessary to find privity). Mid-Continent controlled Bay Rock's defense, and its position with respect to St. Paul's subrogation right is the same as Bay Rock's position. Accordingly, we conclude that Mid-Continent was in privity with Bay Rock, and, as a result, Mid-Continent is collaterally estopped from re-litigating St. Paul's right of subrogation.[4]

B. The Policies' General Grants of Coverage

Mid-Continent asserts that the district court erred in finding that the damages awarded against Bay Rock fell under the Policies' general grants of coverage. Mid-Continent's brief raises two arguments to support its assertion: (1) the damages awarded against Bay Rock are not covered because HOC did not have an ownership interest in Striebeck No. 1; and (2) the damages at issue are not covered because they were not because of property damage as required by the Policies. This section will address each of Mid-Continent's arguments in turn.

---

[4] The San Antonio Court of Appeals's opinion in the underlying state court action shows that the issue of St. Paul's subrogation right was fully litigated in that action and that the determination of that issue was essential to the state court judgment. *Bay Rock Operating Co.*, 298 S.W.3d at 222-26.

1. Ownership Argument

Mid-Continent argues that the damages awarded against Bay Rock are not covered because HOC did not have an ownership interest in Striebeck No. 1. The terms of the Policies do not require HOC to have an ownership interest in Striebeck No. 1 for there to be coverage, and Mid-Continent does not cite any authority that supports such a proposition. Accordingly, we conclude that Mid-Continent's first argument is without merit.

The Policies contain similar grants of coverage. The CGL Policy states that Mid-Continent "will pay those sums that [Bay Rock] becomes legally obligated to pay as damages because of . . . 'property damage' . . . ." Similarly, the Umbrella Policy states that Mid-Continent "will indemnify [Bay Rock] for ultimate net loss in excess of the retained limit because of . . . property damage . . . ." The CGL Policy and the Umbrella Policy both define "property damage," in relevant part, as: (1) "Physical injury to tangible property, including all resulting loss of use of that property. . . .;" or (2) "Loss of use of tangible property that is not physically injured." Accordingly, to prove coverage, Bay Rock only had to show: (1) that it was legally obligated to pay the damages awarded against it; and (2) that the damages awarded were because of physical injury to tangible property. Nothing in the Policies require the claimant—HOC—to have an ownership interest in the property that was damaged for coverage to exist.

To support its ownership argument, Mid-Continent also asserts that the underlying state lawsuit "established that [HOC] suffered no injury in the blowout." This argument, however, does not show that HOC needed to have an ownership interest in Striebeck No. 1 for there to be coverage. Moreover, the underlying state lawsuit actually established the opposite of Mid-Continent's

6

assertion because the state court jury found that HOC incurred losses and awarded it damages as a result.[5]

Accordingly, HOC's lack of an ownership interest in Striebeck No. 1 did not defeat Bay Rock's claim for coverage.

2. "Because of Property Damage"

Mid-Continent also argues that the damages awarded against Bay Rock were not related to any physical injury to tangible property and, therefore, are not covered by the Policies. Specifically, Mid-Continent argues that the following costs are not covered: (1) the costs to control Striebeck No. 1; and (2) the costs to repair, complete, and evaluate the well.[6] The district court found that all of these damages were the result of physical injury to tangible property and, therefore, they were covered by the Policies. Mid-Continent argues that the district court's finding was erroneous. To support its argument, Mid-Continent: (1) argues that Appellees failed to demonstrate that the costs at issue were related to property damage; (2) argues that there was no injury to the wellbore; and (3) argues that the completion and evaluation costs were not incurred because of the blowout. We will address each of Mid-Continent's arguments in turn.

Mid-Continent's first argument asserts that Appellees failed to demonstrate that the costs at issue were related to any property damage. Mid-

---

[5] If Mid-Continent is making this "no loss" argument in an attempt to re-litigate whether HOC incurred any losses at all, the doctrine of collateral estoppel would bar it from re-litigating the issue of HOC's losses, because the facts of this case show: (1) the issue of HOC's losses was litigated in the underlying liability suit; (2) the issue of HOC's losses was essential to the state court judgment because HOC had to suffer losses to be awarded damages; and (3) Mid-Continent was in privity with Bay Rock because Mid-Continent controlled Bay Rock's defense, and its position with respect to HOC's losses is the same as Bay Rock's position. *See Getty Oil*, 845 S.W.2d at 802; *Borum*, 53 S.W.3d at 886-88.

[6] In its reply brief, Mid-Continent concedes coverage for the lost gas award.

7

Continent's first argument is based on the fact that HOC and the working interest owners were not awarded other costs beyond the costs to control, repair, complete, and evaluate the well. The bare fact that certain other costs were not awarded does not show that Appellees failed to demonstrate that the costs that were awarded were related to property damage. In the district court, Appellees demonstrated that the costs at issue were related to property damage by showing that they were incurred because of the blowout and the resulting property damage from it. Accordingly, we conclude that Appellees did show that the costs at issue were related to property damage and that Mid-Continent's first argument fails to indicate any genuine issue for trial.

Mid-Continent's second argument asserts that there was no injury to the wellbore and, therefore, a reasonable jury could find that none of the costs awarded were related to property damage. The only evidence that Mid-Continent cites to support its argument directly contradicts its assertion.[7] As a result, we hold that Mid-Continent's second argument fails to create a fact issue as to any of the damages awarded against Bay Rock.

Mid-Continent's final argument asserts that the evaluation and completion costs awarded against Bay Rock were not related to the blowout and, therefore, a reasonable jury could find that the costs were not covered by the Policies. As an initial matter, we note that the state jury award directly contradicts Mid-Continent's assertion; the jury award states that the completion and evaluation costs awarded were damages that were suffered as a result of the blowout. To the extent that Mid-Continent has created a fact issue as to whether the completion and evaluation costs resulted from the blowout, we hold

---

[7] The evidence cited by Mid-Continent states as follows: "It just turned out that there was wellborn [sic] damage . . . ."

that Mid-Continent is collaterally estopped from re-litigating this issue because: (1) the jury award shows that this issue was litigated in the underlying liability suit; (2) this issue was essential to the underlying judgment because the jury could not have awarded the completion and evaluation costs if they were not because of the blowout; and (3) Mid-Continent and Bay Rock were in privity with respect to this issue because Mid-Continent controlled Bay Rock's defense and both Mid-Continent and Bay Rock have the same position on the issue. *See Getty Oil*, 845 S.W.2d at 802; *Borum*, 53 S.W.3d at 886-88.

In summary, because Mid-Continent has failed to create a triable jury issue as to whether any of the damages awarded against Bay Rock were because of physical injury to tangible property, we hold that the district court did not err in concluding that the damages at issue were related to physical injury to tangible property and, therefore, covered by the Policies.

C. Exclusions and Limitations

Mid-Continent raises a number of limitations and exclusions to coverage and argues that the district court erred in finding that none of them were applicable. We address each of the exclusions and limitations raised by Mid-Continent in turn.

1. The Underground Equipment Limitation

Mid-Continent argues that the CGL Policy's "Underground Equipment Limitation" removes from coverage the repair costs at issue, which were incurred to remove a stuck drill pipe. Appellees assert that Mid-Continent waived this argument. Mid-Continent rebuts Appellees' assertion by stating that it raised this argument in its complaint and in its summary judgment motions. The fact that Mid-Continent raised this argument in its complaint will not save it from waiver if it failed to present this argument in its summary judgment motions. *Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667, 678 (1st Cir. 1995) ("Even an

issue raised in the complaint but ignored at summary judgment may be deemed waived."). In its motions, Mid-Continent did cite the Underground Equipment Limitation, but it only argued that the limitation removed from coverage "property damage to 'any casing, pipe, bit or tool . . . or other drilling . . . equipment.'" Mid-Continent did not argue that the limitation applied to removal of a drill pipe. Because Mid-Continent failed to raise its removal argument in the district court, the argument is waived. *See id.*; *see also See Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 877 (5th Cir. 2009) ("[A]rguments not raised before the district court are waived and cannot be raised for the first time on appeal.").

2. The Well Control Provision

Mid-Continent argues that the control costs awarded against Bay Rock are removed from coverage by an exclusion in the CGL Policy and a limitation in the Umbrella Policy (collectively, the "Well Control Provision"). Mid-Continent bears the burden of proving that an exclusion or limitation applies. *Underwriters at Lloyd's of London v. Gilbert Tex. Constr.*, *L.P.*, 245 S.W.3d 29, 33 (Tex. App.-Dallas 2007), *aff'd,* 2010 WL 2219645 (Tex. 2010). The district court found that the Well Control Provision only removed from coverage those control costs incurred at a well in which Bay Rock had a working interest, and, because Bay Rock did not have working interest in Striebeck No. 1, the court found that the costs to control Striebeck No. 1 were covered. We review the district court's policy interpretation de novo. *Finger Furniture Co. Inc. v. Commonwealth Ins. Co.*, 404 F.3d 312, 314 (5th Cir. 2005). We hold that the district court did not err in its interpretation of the Well Control Provision.

The CGL Policy and the Umbrella Policy both remove from coverage "[a]ny cost or expense incurred by [Bay Rock] or at [Bay Rock's] request or by or at the request of any 'Co-owner of the Working Interest' in connection with controlling

or bringing under control any oil, gas, or water well." The CGL Policy defines "Co-owner of the Working Interest" as "any person or organization who is, with [Bay-Rock], a co-owner, joint venturer or mining partner in mineral properties . . . ." Mid-Continent argues that the control costs at issue were incurred at Bay Rock's "request" because it participated in obtaining well control services from Cudd and, therefore, the control costs are removed from coverage by this provision.

Under Texas law, we are required to interpret "[c]ontract provisions . . . so as to avoid meanings that produce unreasonable, oppressive, or absurd results . . . ." *Cont'l Sav. Ass'n v. U.S. Fid. & Guar. Co.*, 762 F.2d 1239, 1245 (5th Cir. 1985). Under Mid-Continent's interpretation, the control costs awarded against Bay Rock would have been covered if Bay Rock had refused to participate in obtaining well control services from Cudd. In other words, because Bay Rock made an affirmative attempt to mitigate the damages from the blowout, it lost coverage. Mid-Continent's interpretation creates a perverse incentive on the part of insureds like Bay Rock to do nothing when a well goes out of control in order to preserve their right to coverage. As a result, we cannot accept Mid-Continent's interpretation of the Well Control Provision because it leads to unreasonable and absurd results.

Because we cannot accept Mid-Continent's interpretation, we must now determine whether the district court's interpretation of the provision was a reasonable one. The district court found that the Well Control Provision only applied to costs to control a well in which an insured has a working interest (i.e., is a "co-owner"). The Well Control Provision plainly refers to Bay Rock's co-owners of a working interest, and it is uncertain whether this working interest requirement was meant to apply to control costs incurred by Bay Rock or at Bay Rock's request. Under Texas law, courts "must resolve . . . uncertainty [in an

11

insurance policy] by adopting the construction that most favors the insured." *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991). Therefore, we must construe the Well Control Provision as the district court did in favor of Bay Rock, and, as a result, we hold that the control costs awarded against Bay Rock are covered by the Policies.

3. Exclusions 2.j.(5) and 2.j.(6) in the CGL Policy

Mid-Continent argues that exclusions 2.j.(5) and 2.j.(6) in the CGL Policy exclude from coverage all the damages at issue. The district court found that these exclusions were inapplicable because they were superseded by the CGL Policy's Oil & Gas Endorsement. We review the district court's interpretation of the policy de novo. *Finger Furniture Co. Inc.*, 404 F.3d at 314. After reviewing the terms of the policy, we conclude that these exclusions do not negate coverage here.[8]

"Endorsements to a policy generally supersede and control over conflicting printed terms within the main policy;" however, the provisions found in the main "policy and endorsement should be construed together unless" doing so would negate or render superfluous the additional coverage afforded in the endorsement. *See Mesa Operating Co. v. Cal. Union Ins. Co.*, 986 S.W.2d 749, 754-55 (Tex. App.-Dallas 1999, pet. denied).

Exclusion 2.j.(5) excludes all property damage to real property that is the subject of Bay Rock's drilling operations. The Oil & Gas Endorsement provided Bay Rock with additional coverage for property damage to "[a]ny formation

---

[8] Mid-Continent only argues that the district court erred in finding that exclusions 2.j.(5) and 2.j.(6) were superseded. The district court also found that identical provisions in the Umbrella Policy, exclusions 2.k.(3) and 2.k.(4), were superseded. Because Mid-Continent fails to challenge the district court's determination as to 2.k.(3) and 2.k.(4), any such argument is waived. *Askanase v. Fatjo*, 130 F.3d 657, 668 (5th Cir. 1997) ("All issues not briefed are waived.").

strata or area in or through which exploration for or production of any substance is carried on." The application of exclusion 2.j.(5) would eliminate the additional coverage that Bay Rock purchased with the Oil & Gas Endorsement. Accordingly, we conclude that the district court did not err in finding that exclusion 2.j.(5) was superseded.

Exclusion 2.j.(6) removes from coverage property damage to "that particular part of any property that must be restored, repaired or replaced because [Bay Rock's] work was incorrectly performed on it." Exclusion 2.j.(6) has been interpreted to apply only to "property damage to parts of a property that were themselves the subject of defective work by [an] insured." *Mid-Continent Cas. Co. v. JHP Dev., Inc.*, 557 F.3d 207, 215 (5th Cir. 2009). As a result, the exclusion "does not bar coverage for damage to parts of a property that were the subject of only nondefective work by the insured and were damaged as a result of the defective work by the insured on other parts of the property." *Id*. Given this interpretation of the exclusion, we will first address whether exclusion 2.j.(6) even applies to the damages at issue.

Mid-Continent argues that Bay Rock was contracted to supervise the drilling of Striebeck No. 1 as a whole, and, because the damages at issue resulted from Bay Rock's defective supervision, all property damage related to the well is excluded by 2.j.(6). Mid-Continent's argument is inconsistent with the case law and the terms of the exclusion, which restricts the exclusion to property damage to that particular part of Striebeck No. 1 that was the subject of Bay Rock's defective work. The state liability suit established that the damages at issue were incurred as a result of "Bay Rock's negligent decision to drill ahead without running a true formation integrity test ("FIT"), also known as a 'shoe test' or 'casing seat test,' to ensure that the intermediate casing seat and surrounding formation could withstand the anticipated higher pressures as

they drilled further down-hole." *Bay Rock Operating Co.*, 298 S.W.3d at 227, 230. The state court suit shows that the intermediate casing seat and the surrounding formation were the property that was the subject of Bay Rock's defective work, and, as a result, exclusion 2.j.(6) only applies to property damage to that property; the exclusion does not apply to any resulting damage to other property. Mid-Continent does not point to any evidence that any of the costs awarded were specifically for property damage to the intermediate casing seat or the surrounding formation.[9] Consequently, we hold that exclusion 2.j.(6) does not apply to any of the damages at issue.

If we accepted Mid-Continent's interpretation of 2.j.(6), as applying to any and all property damage to Striebeck No. 1, we would still find 2.j.(6) inapplicable because Mid-Continent's interpretation would cause an irreconcilable conflict between the exclusion and the additional coverage purchased by Bay Rock in the Oil & Gas Endorsement. In the Oil & Gas Endorsement, Bay Rock purchased coverage for any damage to the formation, strata, or area in which it worked, as well as coverage for all surface and subsurface property damage from a blowout.[10] The application of exclusion

---

[9] Mid-Continent's brief fails to argue or present any evidence to show that the damages at issue were for property damage to the intermediate casing seat or the surrounding formation, and it is not our duty to search the record for such evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (noting that it is not the duty of this court to "sift through the record in search of evidence to support a party's opposition to summary judgment").

[10] Paragraph IV of the Oil & Gas Endorsement contains a provision ("the Blowout Endorsement") that states as follows: "Unless so indicated below, the Blow-out and Cratering of any well is included within the Limit of Insurance." The language immediately following the Blowout Endorsement states, "[i]f so indicated, this insurance does not apply to 'Property Damage' on or above the surface of the earth caused by the blow-out or cratering of any well" (the "Surface Limitation"). The Surface Limitation was not indicated as applicable. Mid-Continent argues that the language of the Surface Limitation mirrors the scope of coverage found in the Blowout Provision and, therefore, the provision only covers property damage on or above the surface of the earth. Appellees argue that the plain language of the Blowout

2.j.(6), as interpreted by Mid-Continent, would exclude from coverage all the additional property damage coverage described within the Oil & Gas Endorsement. Accordingly, even if we accepted Mid-Continent's interpretation, we would still find exclusion 2.j.(6) inapplicable because Mid-Continent's interpretation would lead us to conclude that the exclusion was superseded.

In summary, we find that the district court did not err in finding that exclusions 2.j.(5) and 2.j.(6) did not remove from coverage the damages awarded against Bay Rock.

## IV. CONCLUSION

Because Mid-Continent has failed to show that the district court committed reversible error in granting Appellees summary judgment, we AFFIRM.

---

Provision provides coverage for both surface and subsurface property damage; Appellees' argument is further supported by the fact that the Surface Limitation does not mirror the terms of the Blowout Endorsement as other limitations in the endorsement do. The interpretations provided by Appellees and Mid-Continent are both reasonable interpretations of the Oil & Gas Endorsement's blowout coverage. When there are two reasonable interpretations of a policy provision, Texas law requires us to construe the provision in favor of the insured, "even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *Hudson Energy Co.*, 811 S.W.2d at 555. Accordingly, we must adopt the reasonable interpretation offered by Bay Rock and the other appellees.