## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-20652

United States Court of Appeals
Fifth Circuit

**FILED**

February 26, 2019

Lyle W. Cayce
Clerk

MID-CONTINENT CASUALTY COMPANY,

Plaintiff - Appellee Cross-Appellant

v.

PETROLEUM SOLUTIONS, INCORPORATED,

Defendant - Appellant Cross-Appellee

Appeals from the United States District Court
for the Southern District of Texas

Before JONES, HAYNES, and OLDHAM, Circuit Judges.

HAYNES, Circuit Judge:

This is an insurance coverage dispute. Mid-Continent Casualty Company ("Mid-Continent") filed a declaratory judgment action seeking a declaration that it did not owe coverage for a judgment assessed against its insured, Petroleum Solutions, Incorporated ("PSI"). Mid-Continent claimed it did not owe coverage because PSI breached the Cooperation Clause in its policy by refusing to dismiss its claim against a third party in the underlying lawsuit and because the judgment was not covered under the policy. At summary judgment, the district court ruled that the Cooperation Clause applied to PSI's third-party claim and that only parts of the judgment were covered. The case proceeded to trial on whether PSI complied with the Cooperation Clause and

No. 17-20652

whether Mid-Continent waived reliance on the Cooperation Clause. The jury found for PSI. Both parties appealed. For the reasons set forth below, we AFFIRM in part, REVERSE in part, and REMAND to enter judgment consistent with this opinion.

## I. Factual and Procedural Background

This case arises from a leak in an underground fuel storage tank. In 1997, PSI constructed and installed an underground fuel tank system for Bill Head Enterprises ("Head") underneath its truck stop. In 2001, Head discovered fuel had leaked from the system. PSI notified Mid-Continent, with whom it had a commercial general liability policy (the "Policy"), of Head's potential claim against PSI. Mid-Continent retained counsel to investigate the claim. Mid-Continent and PSI believed that the cause of the leak was a faulty flex connector manufactured by Titeflex Corporation ("Titeflex").

Head sued PSI in February 2006, arguing that PSI was responsible for the faulty flex connector and the leak. Mid-Continent assumed PSI's defense but reserved its rights as to coverage obligations under the Policy. PSI brought a third-party claim against Titeflex, arguing that Titeflex was strictly liable under Texas Civil Practice and Remedies Code § 82.002 and seeking contribution and indemnity. Titeflex then filed a counterclaim against PSI under § 82.002.

In June 2008, Mid-Continent told PSI that Titeflex had offered to dismiss its counterclaim if PSI would dismiss its third-party claim. PSI dismissed without prejudice its claim against Titeflex. The following day, Titeflex advised that it would dismiss its counterclaim only if PSI dismissed its claim with prejudice. Mid-Continent urged PSI to accept the settlement offer, but PSI was concerned that doing so would leave it without recourse against

2

No. 17-20652

Titeflex.  So PSI rejected the settlement offer.  The case proceeded to trial and the jury returned a verdict in favor of Head and Titeflex.[1]

Mid-Continent then filed a declaratory judgment action in the district court seeking a determination of the parties' rights under the Policy.  It alerted PSI that it was denying coverage for the Titeflex judgment because PSI breached the Cooperation Clause by "fail[ing] to cooperate with Mid-Continent in the investigation and settlement of the Titeflex counterclaim."  Mid-Continent also told PSI that although the Professional Liability Endorsement ("PLE") in the Policy potentially provided coverage for the Titeflex judgment, Exclusion q of the Endorsement precluded coverage.

The district court ruled on cross motions for summary judgment, holding that the PLE did not provide coverage for the Titeflex judgment but that if it had, Exclusion q would not apply.  It concluded that without the PLE, the Policy provided coverage for only part of the Titeflex judgment.  It also concluded that the Cooperation Clause applied to PSI's claim against Titeflex but genuine issues of material fact existed about whether PSI complied with the Cooperation Clause.  The case proceeded to trial on this issue and whether Mid-Continent waived its right to assert the Cooperation Clause.  The jury entered a verdict in PSI's favor.  The district court then entered judgment partially in PSI's favor pursuant to its conclusion that only some of the Titeflex judgment was covered.  PSI appealed and Mid-Continent cross appealed.

## II.  Discussion

On appeal, PSI argues that the district court erred in refusing to hold that, as a matter of law, the Cooperation Clause cannot require PSI to settle

---

[1] PSI appealed the judgments.  The Texas Supreme Court reversed and remanded the Head judgment.  *Petroleum Sols., Inc. v. Head*, 454 S.W.3d 482, 496 (Tex. 2014).  On remand, PSI ultimately prevailed against Head.  Thus, only the Titeflex judgment is at issue here.

its affirmative third-party claim. Mid-Continent argues that there was no evidence to support the jury's finding that it waived reliance on the Cooperation Clause and that the jury instruction about the Cooperation Clause was an abuse of discretion.[2] Regarding the Titeflex judgment, PSI argues that the PLE provides coverage for the entire Titeflex judgment and Mid-Continent challenges the district court's ruling that Exclusion q of the PLE does not apply. We address the Cooperation-Clause claims first, followed by the claims related to the PLE.

### A. Regardless of whether the Cooperation Clause applies to affirmative claims, the Cooperation-Clause jury instruction was not an abuse of discretion.

PSI's Policy contains a Cooperation Clause that requires PSI to "cooperate with [Mid-Continent] in the investigation or settlement of the claim or defense against the 'suit'".[3] Mid-Continent claimed PSI breached this clause by refusing to dismiss its claim against Titeflex. The district court refused to find as a matter of law that the Cooperation Clause does not apply to the circumstance of an insurer requiring an insured to give up a right against a third party. At trial, the district court instructed the jury that "PSI complied with the Cooperation Clause if PSI's conduct was reasonable and justified under all the circumstances that existed." The jury found that PSI complied.

Mid-Continent offers no law to support its novel and dubious concept that the Cooperation Clause applies to an insured's affirmative claims against

---

[2] Because we conclude the district court's Cooperation-Clause jury instruction was not an abuse of discretion, we do not reach Mid-Continent's waiver argument. We note, however, that simply sending an insured generic reservation of rights letters such as the ones sent here is likely insufficient. *See Duke v. Hoch*, 468 F.2d 973, 979 (5th Cir. 1972) (noting that a reservation of rights letter was "no more than a general warning").

[3] The Policy defines "Suit" as a "civil proceeding in which damages because of 'bodily injury,' 'property damage,' or 'personal and advertising injury' to which this insurance applies are alleged." It does not define "Claim."

a third party, and the direction of the law in this area is against such a conclusion.[4]  We thus do not endorse that holding by the district court. However, given that PSI prevailed at trial on this issue, it is unnecessary to address the legal question further.  Even assuming arguendo that the Cooperation Clause could apply to affirmative claims in some theoretical circumstances, we reject Mid-Continent's argument that the Cooperation-Clause jury instruction was an abuse of discretion.  *See Janvey v. Dillon Gage, Inc. of Dall.*, 856 F.3d 377, 388 (5th Cir. 2017) ("Jury instructions are reviewed for abuse of discretion.")

"Reversal is appropriate when the 'charge as a whole leaves [the court] with substantial and ineradicable doubt whether the jury [was] properly guided in its deliberations' and the challenged instructions, separately or collectively, 'affected the outcome of the case.'"  *Id.* (brackets in original) (quoting *Jowers v. Lincoln Elec. Co.*, 617 F.3d 346, 352 (5th Cir. 2010)).  In Texas, an insured's cooperation-clause duties are generally tethered to a reasonableness standard, and compliance with the clause depends on the circumstances of a particular case.  *Am. Nat'l Cty. Mut. Ins. Co. v. Medina*, No. 05-16-01062-CV, 2018 WL 4037357, at *3 (Tex. App.—Dallas Aug. 22, 2018, no pet.) (mem. op.); *Frazier v. Glens Falls Indem. Co.*, 278 S.W.2d 388, 391–92

---

[4] *See, e.g., Lafarge Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389, 397 (5th Cir. 1995) (suggesting that the insurer cannot use the Cooperation Clause to require the insured to cooperate in the coverage litigation), *overruled on other grounds by Grapevine Excavation, Inc. v. Md. Lloyds*, 35 S.W.3d 1, 5 (Tex. 2000); *Bituminous Cas. Corp. v. Tonka Corp.*, 140 F.R.D. 381, 386 (D. Minn. 1992) ("This court rejects the conclusion that because an insured agrees to cooperate with the insurance company, in the event he is sued or otherwise makes a claim under the policy, that the insured has thereby forever contractually waived the attorney-client privilege."); *Barney v. Aetna Cas. & Sur. Co.*, 185 Cal. App. 3d 966, 978 (1986) ("The derogation of plaintiff's collateral right to counterclaim against Yoakum deprived her of the policy's benefits as surely as if Aetna unreasonably had refused to indemnify, defend or settle at all . . . ."); Rick Virnig, *The Insured's Duty to Cooperate*, 6 J. TEX. INS. L. 11, 12 (2005) ("While the Cooperation Clause surely precludes an insured from sabotaging the insurance company's interests, the clause does not require the insured to subjugate its own best interests.").

(Tex. Civ. App.—Fort Worth 1955, writ ref'd n.r.e.). Therefore, the "reasonable and justified" language in the Cooperation-Clause jury instruction did not improperly guide the jury. Thus, Mid-Continent's Cooperation Clause argument fails.

### B. The PLE covers the entire Titeflex judgment.

The PLE provides that a subsection (d) should be added to the Insuring Agreement in the Policy. Subsection (a) of the Insuring Agreement determines the scope of coverage. It states that Mid-Continent "will pay those sums that [PSI] becomes obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Subsection (d), added by the PLE, states that "'Bodily Injury', 'Property Damage' or 'Money Damages' arising out of the rendering or failure to render professional services shall be deemed to be caused by an 'occurrence.'" The PLE also adds a definition of "Money Damages" to the "Definition" section of the Policy. It defines "Money Damages" as "a monetary judgment, award, or settlement." Finally, the PLE adds four exclusions to the Policy. Relevant here, the PLE adds "Exclusion q" for losses caused intentionally by the insured.

PSI argues that the PLE provides coverage for the Titeflex judgment because the Titeflex judgment is a monetary judgment arising out of PSI's professional services: installation of the fuel tank system at Head's truck stop. Mid-Continent disagrees for two reasons. First, it argues that the PLE does not expand coverage beyond the damages covered under the Insuring Agreement; instead, it simply creates another definition of "occurrence" by clarifying that damages "arising out of the rendering or failure to render professional services" are considered accidental.[5] Second, it argues that the

---

[5] The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

## No. 17-20652

Titeflex judgment did not arise out of PSI's installation of the fuel tank system but from PSI's refusal to dismiss its claim against Titeflex.[6]  Mid-Continent's arguments are unavailing.[7]

We construe the PLE in conjunction with the rest of the Policy.  *Am. Fid. & Cas. Co. v. Bayshore Bus Lines*, 201 F.2d 148, 149 (5th Cir. 1953); *see Mid-Continent Cas. Co. v. Bay Rock Operating Co.*, 614 F.3d 105, 115 (5th Cir. 2010).  Applying this principle to Mid-Continent's interpretation of the PLE is problematic because, as the district court noted, it "renders superfluous the definition of 'occurrence' based on Money Damages and the addition of Money Damages to the 'Definitions' section of the Policy."  "A basic rule of contract construction is that the preferred interpretation is one that provides meaning to every provision and does not read any term out of the contract." *Mesa Operating Co. v. Cal. Union Ins. Co.*, 986 S.W.2d 749, 753 (Tex. App.—Dallas 1999, pet. denied).  This is particularly important in the insurance context where, if there is ambiguity, the construction favoring coverage must be adopted.  *Mid-Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 491 (5th Cir. 2000) ("In Texas, when an insurance policy is ambiguous or inconsistent, the construction that would afford coverage to the insured must govern."). In addition, under Mid-Continent's interpretation, the endorsement creates no additional coverage.  But the purpose of the PLE must be to add coverage. Indeed, we have previously concluded that a Mid-Continent PLE "extend[s]

---

[6] PSI sought coverage for the Titeflex judgment under its 2001 Policy because the property damage to Head's truck stop occurred in 2001.  In its briefing, Mid-Continent argued that because the 2009 Titeflex judgment arose out of PSI's refusal in 2008 to dismiss its claim against Titeflex, PSI should have sought coverage under its 2008 or 2009 policy.  But Mid-Continent conceded at oral argument that the policy year does not matter.  We conclude the applicable policy is the 2001 Policy because that is when the property damage occurred, and the Policy requires that the property damage occur during the policy period.

[7] We review a grant of summary judgment de novo, "using the same standards as the district court." *K.P. v. LeBlanc*, 729 F.3d 427, 435 (5th Cir. 2013) (quoting *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009)).

coverage to claims related to . . . . professional services." *Davis-Ruiz Corp. v. Mid-Continent Cas. Co.*, 281 F. App'x 267, 273 (5th Cir. 2008). Thus, we reject Mid-Continent's interpretation of the PLE.

PSI argues that the "PLE provides coverage for 'Money Damages' [(subsection (d))] if there is 'property damage' [(subsection (a))] during the policy period . . . arising out of 'professional services' that are deemed to be an 'occurrence' [(subsection (d))]." We do not need to decide whether PSI's interpretation is correct or even reasonable. If it is neither, then we would have to conclude that the PLE and the Policy are in conflict. In that case, the PLE and its more specific provisions must control. *See JAW The Pointe, L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 597, 605 n.7 (Tex. 2015) (noting that an endorsement "that provides specific coverage" trumps an exclusion in the policy); *see also Bay Rock Operating Co.*, 614 F.3d at 115. Thus, regardless of whether PSI's interpretation is correct or the PLE and the Policy conflict, the PLE provides coverage for the entire Titeflex judgment.

Examining the PLE, we conclude that it extends coverage when PSI has rendered professional services (or failed to do so) that result in "Bodily Injury," "Property Damage," or "Money Damages." "Money Damages" is defined as a "monetary judgment, award, or settlement." This is a broader definition than that contained in subsection (a): "damages because of 'bodily injury' or 'property damage.'" Thus, we conclude that the PLE provides for a broader range of damages than the common-law definition of "damages" when those damages arise out of professional services. Mid-Continent does not meaningfully challenge that the entire Titeflex judgment[8] is a monetary

---

[8] As we noted above, Titeflex's claim against PSI in the underlying lawsuit was for indemnification under Texas Civil Practice and Remedies Code § 82.002(a). Titeflex also sought attorney's fees under § 82.002(g). When Titeflex won its suit against PSI, the judgment included damages under § 82.002(a) and attorney's fees under § 82.002(g), but it did not segregate the one from the other. The district court concluded that § 82.002(a)

judgment, or that installation of the fuel tank system qualifies as PSI's professional services.

Mid-Continent's second argument, that the Titeflex judgment arose out of PSI's refusal to dismiss its claim rather than its professional services, lacks merit. We do not need to reach the boundaries of "arising out of" in the PLE because the Titeflex judgment is directly related to the leak in the fuel tank system that PSI installed; if there had been no leak, Head would not have sued and there would have been no need for PSI and Titeflex to assert claims against each other. Therefore, we conclude that the PLE provides coverage for the entire Titeflex judgment and the district court erred in its summary judgment holding that it does not.

Even if the PLE covers the Titeflex judgment, Mid-Continent urges us to conclude that Exclusion q in the PLE precludes coverage. Exclusion q denies coverage for "[l]oss caused intentionally by or at the direction of the insured . . . ." Mid-Continent bears the burden of establishing that the exclusion applies. *See Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.,* 141 S.W.3d 198, 204 (Tex. 2004). We conclude Exclusion q does not apply.

The parties agree that Exclusion q concerns the underlying conduct giving rise to the claim but dispute the relevant conduct: Mid-Continent argues it is PSI's refusal to settle the Titeflex claim, and PSI argues it is the fuel leak. Mid-Continent never argues that PSI intended the fuel leak, but even if Mid-Continent is correct that the relevant underlying conduct is PSI's refusal to

damages were covered under the Policy (not the PLE) but § 82.002(g) attorney's fees were not "damages," utilizing the district court's perception of that term as generally applied under Texas law, rather than a policy-specific definition. PSI appeals this ruling, but we do not reach its arguments since we conclude that the PLE covers the entire Titeflex judgment, as a "monetary judgment" under the broader definition provided by the Policy itself. We thus do not need to decide whether the term "damages," by itself, would encompass the entire Titeflex judgment.

settle the Titeflex claim, there is no genuine issue of material fact as to whether PSI caused the Titeflex judgment intentionally.

The Texas Supreme Court has held under a substantially similar exclusion that "[t]he exclusion requires intentional damage, not just intentional conduct." *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 829 (Tex. 2009). Thus, "the dispositive inquiry is whether the insured intended to inflict damage or injury. To forfeit coverage, the insured must intend to harm, not merely intend to act." *Id.* at 833; *see State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 378 (Tex. 1993) ("[A]n insured intends to injure or harm another if he intends the consequences of his act, or believes that they are substantially certain to follow." (citing RESTATEMENT (SECOND) OF TORTS § 8A (1965))).

"Ordinarily, whether an insured intended harm or injury to result from an intentional act is a question of fact." *S.S.*, 858 S.W.2d at 378. But here, there are no genuine issues of material fact as to whether PSI intended a judgment to be entered against it or whether PSI believed it was substantially certain a judgment would be entered against it if it refused the Titeflex settlement. "[T]he mere knowledge and appreciation of a risk—something short of substantial certainly—is not intent." *Id.* (quoting W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 8, at 35–36 (5th ed. 1984)).

PSI claims that, far from being substantially certain that a judgment would be entered against it if it refused the Titeflex settlement, PSI's appellate counsel repeatedly advised it that Titeflex likely would not succeed on its counterclaim. Mid-Continent points to the fact that PSI knew its claim against Titeflex was unlikely to succeed. But the issues with PSI's claim are due to Mid-Continent's actions, not PSI's; Mid-Continent's expert lost the alleged faulty flex connector that Titeflex manufactured and yet it was Mid-Continent that decided to assert a claim against Titeflex. Regardless, these problems

No. 17-20652

largely concern the viability of PSI's claim against Titeflex, not Titeflex's counterclaim.  Thus, the district court did not err in concluding that Exclusion q does not apply.  Because Exclusion q does not bar coverage, Mid-Continent owes PSI coverage for the entire Titeflex judgment.  We thus reverse the district court's conclusion that the PLE does not cover the entire Titeflex judgment and hold that it does.[9]

### III. Conclusion

For the reasons stated above, we AFFIRM in part, REVERSE in part, and REMAND to the district court to enter judgment consistent with this opinion.

---

[9] Because PSI prevailed below, the district court awarded PSI attorney's fees pursuant to § 38.001 of the Texas Civil Practice and Remedies Code. Mid-Continent argues this was error because PSI should not have prevailed. Because we agree PSI is the prevailing party, Mid-Continent's argument fails.