# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
September 13, 2019

Lyle W. Cayce
Clerk

No. 18-20493

GEOPHYSICAL SERVICE, INCORPORATED,

 Plaintiff - Appellant

v.

TGS-NOPEC GEOPHYSICAL COMPANY,

 Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:14-CV-1368

Before CLEMENT, HAYNES, and WILLETT, Circuit Judges.

PER CURIAM:*

---

&ast; Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-20493

Geophysical Service, Incorporated ("Geophysical"), a Canadian company that collects, prepares, and licenses offshore seismic data, appeals the grant of summary judgment against it on its copyright infringement claim. Because we agree with the district court that Geophysical granted non-party the Canada-Newfoundland and Labrador Offshore Petroleum Board (the "Board") an implied license to copy and distribute its speculative seismic data, we AFFIRM the judgment without reaching the parties' other arguments.

## I.     Background

Canada regulates the use of seismic surveys to explore for petroleum deposits off the Canadian shore. The 1960 Canada Oil and Gas Regulations required offshore seismic surveyors to obtain a permit before conducting surveying operations. After the surveys were conducted, the surveyors were required to submit the resulting seismic data to the government. This seismic data could then be released to the public after a set confidentiality period. The 1982 Canada Oil and Gas Act retained the Regulations' submission requirements and lengthened the confidentiality period to five years.

In March 1982, Geophysical submitted a permit application (the "Offshore Program Notice") to the Canadian government to conduct a seismic survey that resulted in the creation of the works at issue in this case (the "GSI Works").[1] The precursor to the Board, the Canada Oil and Gas Lands Administration (the "Administration"), approved Geophysical's application. The approved Offshore Program Notice refers to a 1979 publication called "Offshore Exploration." Offshore Exploration explains the requirement that offshore surveyors submit seismic data to the government and provides that

---

[1] The application was actually submitted by Geophysical's predecessor-in-interest, a Delaware corporation also called "Geophysical Service Inc." Through various corporate sales, the Canadian Geophysical now owns the GSI Works and any copyrights in them that the Delaware corporation held. Because these sales do not affect the analysis, we refer to both the Canadian corporation and its Delaware predecessor-in-interest as "Geophysical."

members of the public may purchase copies of the released data from the Administration after the lapse of the confidentiality period. Geophysical submitted the first copies of the GSI Works to the Administration in November 1982. Two months later, the Administration issued a report listing seismic data that it had released to the public and again describing how to request copies. Included in the list were Geophysical's data from previous surveys whose confidentiality period had already expired. Following the release of the report, Geophysical submitted copies of the GSI Works to the Administration without protest on four more occasions between March and November 1983.

In 1999, Appellee TGS-NOPEC Geophysical Co. ("TGS"), a Texas company that provides global geological data products and services, requested copies of the GSI Works from the Board (which had since replaced the Administration as the relevant Canadian regulatory body). The Board sent a copy to TGS in Texas. Fifteen years later, Geophysical sued TGS for copyright infringement, claiming direct infringement, contributory infringement, and unlawful removal of copyright management information. The district court granted TGS's motion to dismiss in full, and Geophysical appealed. A different panel of this court affirmed the district court in part, but reversed and remanded Geophysical's direct infringement claim based on unlawful importation. *Geophysical Serv., Inc. v. TGS-NOPEC Geophysical Co.*, 850 F.3d 785, 792, 796–98, 800 (5th Cir. 2017).[2]

On remand, TGS eventually moved for summary judgment. It argued that Geophysical had granted the Board an express, or alternatively implied, license to copy and distribute the GSI Works after the confidentiality period

---

[2] The court's opinion in this prior appeal discusses the factual and regulatory background in more detail.

No. 18-20493

expired.  The district court granted TGS summary judgment on the implied-license and express-license theories.  Geophysical timely appealed.

## II.     Discussion

Geophysical appeals both of the district court's holdings, and TGS argues the panel can alternatively affirm the district court under copyright law's first-sale doctrine.  Because we agree with the district court that Geophysical granted the Board an implied license, we do not reach the express-license or first-sale arguments.

We review a grant of summary judgment de novo.  *Mid-Continent Cas. Co. v. Petroleum Solutions, Inc.*, 917 F.3d 352, 357 n.7 (5th Cir. 2019). Because the contention that a defendant possesses a license authorizing use of materials claimed to be copyrighted is an affirmative defense, TGS would bear the burden of proof at trial.  *Lulirama Ltd., Inc. v. Axcess Broad. Servs., Inc.*, 128 F.3d 872, 884 (5th Cir. 1997).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  "If the moving party meets that burden, the non-moving party must show the existence of a genuine issue for trial, and the evidence and the inferences must be viewed in the light most favorable to the non-movant."  *HSBC Bank U.S.A., N.A. v. Crum*, 907 F.3d 199, 202 (5th Cir. 2018).

Geophysical alleges that, by importing copies of the GSI Works into the United States, TGS violated its exclusive right to "distribute copies" of the GSI Works. *See* 17 U.S.C. § 106(3).  Even though the copies were made in Canada, the lawfulness of importing them into the United States is a question of U.S. law. *See* 17 U.S.C. § 602(a)(2) ("Importation into the United States . . ., without the authority of the owner of copyright under this title, of copies . . ., the making of which . . . would have constituted an infringement of copyright if this title had been applicable, is an infringement of the exclusive right to distribute

4

copies . . . under section 106 . . . ."). TGS does not dispute that Geophysical holds a valid copyright in the GSI Works. Thus, the relevant question for this Court is whether, under U.S. copyright law, Geophysical granted the Board a license to make and distribute copies of the GSI Works.

We determine whether an implied license exists based on "the totality of the parties' conduct." *Lulirama*, 128 F.3d at 879; *see Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 501 (5th Cir. 2012) (holding that "an implied license [can] arise . . . where the totality of the parties' conduct support[s] such an outcome"). "Consent for an implied license may take the form of permission or lack of objection." *Baisden*, 693 F.3d at 500.

Here, the totality of the parties' conduct proves that Geophysical granted the Board an implied license to copy and distribute the GSI Works.[3] The relevant Canadian law and publications explicitly provided that the government could copy and distribute seismic data once the confidentiality period had expired. The 1982 Canada Oil and Gas Act notes that "information or documentation furnished . . . in respect of geological or geophysical work . . . [may be disclosed] . . . on the expiration of five years following the completion of the work." Offshore Exploration similarly provides for this practice; under the heading "Obtaining Copies of Reports," it notes that "[g]eological and geophysical reports including seismic sections and maps may be purchased after expiry of the confidential period." Finally, the 1983 report listing geological data released in accordance with the 1982 Canada Oil and

---

[3] We note that Geophysical in fact granted the Administration, rather than the Board, an implied license, since the Board was not established until after Geophysical created and submitted the GSI Works. The 1987 Atlantic Accord Implementation Act that established the Board directs that any operating licenses the Administration granted were transferred to the Board. We conclude that the Administration's implied license was therefore also transferred to the Board. *See* 3 NIMMER ON COPYRIGHT § 10.02 [B][4][c] (2019) (noting that a non-exclusive license should remain intact even when the identities of the parties change, such as through merger, sale, or reorganization).

No. 18-20493

Gas Act also provided that released data could be copied and purchased. Thus, it was public information that the government copied and distributed seismic data.

Along those lines, TGS provided a declaration from the Director General of the Administration's Land Management Branch, who, based on more than 40 years of industry experience, stated that offshore seismic surveyors should have known that the Administration was copying data after the confidentiality period during the time Geophysical submitted the GSI Works. Indeed, Offshore Exploration was referenced in Geophysical's Offshore Program Notice, and the 1983 reports contain multiple examples of Geophysical's data that had been released. Yet Geophysical did not object to the government's practice of copying and releasing data when it submitted the GSI Works.

Geophysical argues that it produced evidence that it did not believe the government would copy its data because the government often declined to copy "speculative" seismic data; it argues that summary judgment was improper because of this factual dispute. But Geophysical's evidence creates no genuine issues of material fact. Geophysical points to an affidavit from its president in which he states that "[a]t the relevant times, the government . . . never advised that it would make available to and directly participate in the copying of the Seismic Works for other parties." The president also notes, however, that "[o]ver time, . . . government entities . . . conduct[ed] their own copying in-house for third parties." The 1983 reports also show that the government had a policy of making speculative data available for copying—including Geophysical's.[4]

---

[4] Geophysical's reliance on a statement about speculative data in a Canadian court opinion is similarly unavailing. Geophysical has not even attempted to explain how a judge's opinion in that case could be "presented in a form that would be admissible in evidence" in this one. Fed. R. Civ. P. 56(c)(2).

No. 18-20493

Geophysical also points to an affidavit from its chief operating officer, who states that he understood in 1993 and 1994 that Geophysical retained all intellectual property rights in its seismic data and that the Board was protecting Geophysical's rights. But 1993 to 1994 is not the relevant time period; we are concerned with the parties' conduct in 1982—when Geophysical applied for the permit and began giving copies of the GSI Works to the Canadian government.

Even taking the evidence in the light most favorable to Geophysical, the totality of the parties' conduct proves that Geophysical granted the Board an implied license to copy and distribute the GSI Works, and no material fact issues exist.[5] Therefore, we AFFIRM the district court's judgment.

---

[5] Geophysical also argues that even if there is an implied license, it does not cover exporting the GSI Works to the United States. Other circuits have concluded that the parties' conduct reveals the scope of the license. *See Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1235 (11th Cir. 2010) (holding that "an implied license will be limited to a specific use only if that limitation is expressly conveyed"); *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1088 (9th Cir. 1989) (noting an express license to use software did not include copyright use because "copyright licenses are assumed to prohibit any use not authorized"). This is consistent with *Baisden's* totality-of-the-circumstances inquiry. Here, there is nothing in the relevant Canadian law and publications that indicates the Board distributed works only within Canada, and Geophysical fails to point to any evidence that it intended to so limit the implied license. To the contrary, the majority of offshore seismic exploration in Canada at the time was done by American and other foreign companies—*including Geophysical. See supra* n.1. Because one of Canada's stated purposes of releasing the data was to facilitate additional oil exploration, the foreign companies doing such exploration would be among the data's logical recipients. Thus, we reject this argument.